Argued May 4, affirmed as modified June 29, 1955

JEWELL *v.* HARPER

285 P. 2d 133

*E. Otis Smith,* of Ontario, argued the cause for appellant. With him on the brief was Max S. Taggart, of Ontario.

*P. J. Gallagher* argued the cause for respondent. On the brief were Gallagher & Gallagher, of Ontario, and Vernon K. Smith, of Boise, Idaho.

Before WARNER, Chief Justice, and ROSSMAN, LUSK and PERRY, Justices.

PERRY, J.

This is an appeal from a partnership accounting had pursuant to a determination by this court that a partnership existed between George Harper and William Jewell.

A statement of the facts surrounding the partnership is set out in the original opinion, *Jewell v. Harper,* 199 Or 223, 258 P2d 115, 260 P2d 784. However, for the sake of clarity in discussing the issues now before us, we will again set out some of the salient facts.

In July, 1946, George Harper, an uncle of William Jewell, proposed that Jewell come to work for him, stating that he would give Jewell 30 head of heifers, and that when Jewell had "worked these cattle up to 200 head" he would take him in as a partner. This offer was accepted by Jewell, and almost immediately Mr. and Mrs. Jewell took up their residence at the Harper ranch. During the time that Jewell was working "these cattle up to 200 head", Harper was to furnish the cost and expense of the operation, feed, etc., for the cattle, and Jewell was to receive no wages or remuneration of any kind.

The records in this case show that during the years 1946 and 1947, and until the latter part of the year 1948, the proceeds derived from the sales of cattle from the ranch were kept separate and divided according to the individual ownership of the animals sold. In the latter part of 1948, Harper and Jewell, desiring to purchase an airplane to be used in the cattle business, and also desiring to provide a more adequate water supply on the ranch, executed a promissory note in the sum of $9,431 to the Western Idaho Production Credit Association of Caldwell, Idaho, and secured the same with a chattel mortgage, describing therein, as all of the cattle owned by Harper and Jewell, the following chattels:

| | Brand | | | | Age | | Weight | | |
|---|---|---|---|---|---|---|---|---|---|
| "235 Hereford Cows | "AA" | on Left | Side | 3–7 | years | 825 | pounds | ea. |
| 63 Hereford Heifers | " | " | " | " | 2 | " | 550 | " | " |
| 41 Hereford Heifers | " | " | " | " | 1 | " | 550 | " | " |
| 10 Hereford Steers | " | " | " | " | 1 | " | 525 | " | " |
| 199 Hereford Weaner Calves | " | " | " | " | | | | | |
| 8 Hereford Bulls, Reg. | " | " | " | " | 2–4 | " | 1400 | " | " |

Harper represented at this time that the property belonged to the partnership. Also, for the tax year 1949-

1950 for the first time this personal property upon the Harper ranch was listed for taxation as being the property of Harper and Jewell.

The records in this case disclose no sales of any cattle by either of the parties subsequent to the execution of the mortgage and prior to the death of these parties, both Harper and Jewell having perished in a common disaster on February 3, 1949; consequently there were no profits to account for prior to the dissolution of the partnership.

Within a short time after the deaths of Harper and Jewell, the defendant Goldie Mae Harper, widow of George Harper, went out to the ranch. Mrs. Harper testified that the winter of 1949-1950 was very cold and hard upon livestock; that when she arrived at the ranch the cattle were in very bad condition, and a good many were dead in the fields; ''some were dead just outside of the fences, and we had calves that were dead'':

Subsequently the cattle on the ranch were inventoried, and this inventory disclosed that there were 318 head of cattle of various ages and sexes branded ''AA'', that being the brand used by Harper, 180 head branded with the ''Spear A'', that being the brand used by Jewell, and 11 head branded ''45''. The combined total listed under these brands is 509 head, being 47 head short of the total listed under the mortgage given to the Western Idaho Production Credit Association. We find no evidence in this case showing the brands upon the cattle that died. It is, therefore, reasonable that the losses were proportionate, and in translating this loss back in the proportion of each partner's contribution to the cattle inventoried to the date of the chattel mortgage, the record shows that at the time of the execution of the mortgage there were

347 head of cattle bearing the Harper brand, and 209 head (including the 11 head branded "45") bearing the Jewell brand. We are convinced from the record that the partnership was formed shortly prior to the execution of the chattel mortgage, and that the contribution of each partner was as set out above.

This was a solvent partnership, and the trial court determined that there was an equal partnership established, not only as to the profits, but in all the assets of the partnership after payment of debts and costs of liquidation on dissolution.

It is true that the record contains numerous statements by individuals that George Harper represented that he and Jewell were partners, and in some instances that they were equal partners, but it appears to us that he was referring to present conditions which would include the profits from the operation, and was not speaking at any time of or taking into consideration the interest of each in case of a termination of the partnership relation.

Since there is no evidence of any agreement to the contrary, the rules for distribution of assets in settling accounts between partners set out in ORS 68.620 must be followed in determining the liabilities of the partnership and their order of payment. After payment of the liquidating expenses, insofar as is applicable to the facts of this case, the statute provides, first, for the payment of creditors, and, next, for the payment of moneys owing to the partners in respect to the capital contributed.

In determining the capital advanced by each of the partners to the partnership, we have considered those advances, both in relation to the value of cattle at the time of the formation of the partnership and in relation to the number of cattle contributed by each. After full

consideration of each method, we are forced to conclude that we are unable from the record to reach a satisfactory appraisal of the monetary value of the cattle at the time of the formation of the partnership, and must, therefore, for the purposes of liquidation use the number of cattle that each contributed, considering them of equal value without respect to age or sex. Our conclusion, therefor, is that Mrs. Harper, as liquidating agent, shall pay to Mrs. Jewell, as administratrix of the William Jewell estate, 209/556ths of the partnership assets remaining after the payment of the debts and liquidation expenses of the partnership.

The defendant's claim of 200 tons of hay grown upon the ranch as a contribution to the capital of the partnership cannot be considered as a contribution to capital since George Harper had agreed prior to the formation of any partnership to provide the necessary hay for the feeding of all of the cattle in return for the labor to be performed by Jewell upon the ranch; but if it could be said that the hay was produced subsequent to the formation of the partnership, then it is equally true that it was produced by the partnership.

A mathematical review of the record indicates that the contribution of each of the parties to the miscellaneous articles,—such as, machinery, animals, and equipment—used in the operation was approximately of equal value. These items of the partnership will be treated in the same ratio as the division of the partnership assets at its dissolution.

■ The defendant also complains of the trial court including in the accounting 11 animals branded "45" which were sold for the sum of $941.55. The basis of the defendant's claim is that each of the animals branded "45" displayed the brand that was registered in her name. It is admitted by the parties that Mrs.

Harper was the owner of this brand. ORS 604.180 (1) provides as follows:

> "In all suits at law or in equity, or in any criminal proceedings, when the title or right of possession is involved, the brand of any animal shall be prima facie evidence that the animal belongs to the owner of the brand, and that such owner is entitled to possession of the animal at the time of the action, if such brand has been recorded.  *  *  *"

This section of the code is not proof of absolute ownership of the branded animal, but is only prima facie proof of title. The evidence in this case clearly shows that in 1946 when George Harper induced William Jewell to come to the ranch and assist in the cattle operation, he agreed to start Jewell with 30 head of cattle; that shortly after Jewell agreed to go to the ranch, George Harper purchased from his wife, the defendant, what both he and Mrs. Harper believed were all of the cattle bearing the "45" brand, being approximately 28 in number. There is no evidence in this case that all of these cattle originally purchased by Harper as a gift to Jewell were sold, nor that the cattle rounded up were other than a portion of these cattle. The defendant made no claim to any of the "45" brand cattle until after the death of Harper and Jewell. In view of the clear evidence of the sale of all of Mrs. Harper's branded cattle to Jewell, the presumption of ownership that arises by reason of the statute is overcome.

The defendant also contends the trial court erred in failing to allow her the sum of $2,000 as reasonable compensation for her services in winding up the partnership affairs. The general rule of law is that a surviving partner is not ordinarily entitled to compensation for his services in closing and settling partnership affairs in the absence of an express agreement enti-

tling him thereto. This general rule of law is based upon the reasoning that the law enjoins upon a surviving partner the duty to liquidate the partnership, and that the death of a copartner is one of the ordinary risks which a partner must take. 40 Am Jur 348, Partnership, § 314. This general rule, however, has been liberalized in this state by statute. ORS 68.310 (6), provides:

"(6) No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

The situation before us, however, cannot be applied under either the general rule or under the statute referred to. These partners perished in a common disaster; there is no evidence that either survived the other. Under the circumstances the conclusion is inescapable that their deaths occurred simultaneously. We have been unable to discover any precedent, and the parties cite us to none, in a situation such as this. It is certain, however, that in such a situation as is here presented the reasons for the rule against permitting even a surviving partner to receive compensation in the liquidation of the partnership affairs must fail.

■ Where all of the partners of a partnership perish in a common disaster, it is certainly necessary that someone must take over the partnership and effect a liquidation after the dissolution of the partnership. It seems only reasonable and fair that the person who carries this out should receive reasonable compensation. We are, therefore, of the opinion that Mrs. Harper is entitled to reasonable compensation for her services rendered to the partnership, and that the sum of $2,000 is reasonable and proper.

The defendant claims the trial court was in error in allowing interest upon the sum it found to be due the estate of William Jewell, deceased, and in fixing the statutory rate of 6 per cent from the 23rd day of December, 1953, which is the date upon which the defendant filed her report and accounting for the partnership property.

In 30 Am Jur 6, Interest, § 2, it is stated:

"According to the generally accepted definition, interest is the compensation allowed by law, or fixed by the parties, for the use, detention, or forbearance of money or its equivalent. It is the premium or recompense paid for money. * * *"

We assume from the decree rendered that interest was allowed because of the unlawful detention of that portion due the Jewell estate, the detention thereof being for an unreasonable time after the same became due. *Close v. Riddle,* 40 Or 592, 67 P 932.

The annotator of the note to 66 ALR 31, § IV, in commenting upon the allowance of interest between partners during the period of settlement, states the rule as follows:

"On the dissolution of a partnership, interest is not ordinarily allowable as between the partners during the period of settlement of the partnership affairs, if there is no unnecessary delay or improper use of the partnership funds, since the delay which is necessary and incidental to the winding up of the partnership business cannot be ascribed to one partner more than another. * * *"

While there has been delay in reaching a final settlement of accounts, it has all been due to the necessity of determining, first, whether or not a partnership existed between these parties, and, second, in determining their various interests in the funds of

the partnership at its termination by reason of the dissolution caused by the deaths of the parties.

■ We are unable to find any facts to justify an allowance of interest to either or any of the parties to this litigation, in the absence of a showing that the accounting party has acted to delay payment or used partnership funds improperly, since no interest is allowable until a full accounting has been had and determined.

The plaintiff has cross-appealed, contending that the trial court erred in a number of particulars. We believe we have fully answered most of the contentions of the plaintiff in this opinion as written and do not consider the matters not answered of sufficient merit to further extend this opinion.

The decree of the trial court, except as modified herein, is affirmed.

Neither of the parties shall recover their costs.