Argued December 7, 1960, affirmed as modified April 12,
petition for rehearing denied May 16, 1961

# PLATT *v.* HENDERSON

### 361 P. 2d 73

*Donald W. McEwen*, Portland, argued the cause for appellant. On the brief were Cake, Jaureguy, Hardy, Buttler and McEwen, Portland.

*E. F. Bernard,* Portland, argued the cause for respondent. On the brief were Bernard, Bernard, Edwards & Hurley, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and KING, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Wilber Henderson, a member of the Oregon Bar, from a decree of the circuit court which rendered an accounting of the business transacted by him and the plaintiff, Robert Treat Platt, during the period of July 7, 1952, to August 27, 1959, while the two were winding up the law partnership of which they were formerly the members. After the defendant, Henderson, appealed, the plaintiff, Platt, cross-appealed. Later Mr. Platt died. Although his estate has been entered as the respondent cross-appellant, when we use the word "plaintiff" we will refer to Mr. Platt.

The partnership between Mr. Henderson and Mr. Platt was formed July 1, 1937. One other attorney became a partner at that time, but withdrew from the firm September 1, 1950, upon his appointment to a judicial office. The names of two other attorneys appeared in the firm name, but they served upon a salary basis. According to the findings of the circuit court, the partnership was dissolved July 7, 1952, when Mr. Henderson withdrew in the manner we will presently describe. Its office had been in the United States National Bank Building in Portland. When the partnership consisting of the three men was formed July 1, 1937, written articles of co-partnership were signed. When one of the three withdrew September 1, 1950, as above indicated, new articles were

not drafted and signed. We believe that the two remaining partners deemed that the agreement which they had executed July 1, 1937, sufficed to govern their relationship.

Mr. Platt, who was 69 years of age when he entered the partnership with the defendant, had been for many years general counsel for the United States National Bank of Portland. Mr. Henderson was 19 years younger than Mr. Platt and was, at the time when he and Mr. Platt became partners, a member of a smaller firm. He and his partner in that firm became the partners of Mr. Platt, and thereupon the former firm was dissolved. Mr. Platt's principal work in the partnership consisted of taking care of the needs of the United States National Bank from which he received a monthly retainer that he deposited in the firm's bank account. The defendant, Mr. Henderson, handled as his main work the litigation which came to the firm.

We come now to the incidents which led to the dissolution of the partnership. The record indicates that the relationship between the plaintiff and the defendant lacked cordiality. Each respected the other's integrity, industry and ability, but the warm personal attachment which develops through the years and graces the relationship between partners in some law firms had not come forth in this one. Notwithstanding that fact, the evidence warrants a belief that the business of the firm was handled successfully. It affords no basis for a surmise that either of the partners ever thought of terminating the firm until March 26, 1952, when the two members became involved in a heated argument over a complaint which the defendant had drafted for use in an action he was preparing to file. As a witness he swore that he

told the plaintiff in the course of the controversy that he was withdrawing from the firm and that the plaintiff should obtain some one else to do the work he was doing. He claims that the words which he used terminated the partnership, that is, terminated it on March 26, 1952. July 7, 1952, more than three months later, the defendant opened offices in the Failing Building and moved into them. The plaintiff had had no premonition of that development. At that time and without notice to the plaintiff the defendant formed a partnership with one of the attorneys who had served the firm upon a salary basis, but whose name was in the firm name. When he opened his new offices the defendant took from the quarters which he had occupied with the plaintiff until July 7, 1952, the files in forty or more matters that were pending and upon which some work had been done principally by the defendant. Those forty or so matters, apart from the bank's general business, constituted most of the major pending business of the firm. The answer filed by Mr. Henderson contains this averment:

"Upon defendant leaving the offices defendant formerly occupied with plaintiff, defendant, with the knowledge and consent of plaintiff, took with him all of the files, documents and papers incident to such business, for the purpose of continuing and completing such business; thereafter, defendant completed or is in the course of completing, all of the business then pending."

The reply filed by Mr. Platt averred:

"The plaintiff admits that when the defendant left the offices which he occupied with the plaintiff that the defendant took with him files of the partnership business."

The Findings of Fact stated:

"The defendant took with him various clients'

files and 'cases' of clients then being handled by the firm. * * *"

The evidence discloses that the defendant did not request the plaintiff's permission before removing the files, nor did he leave behind a list of the items of business that he had taken. Likewise, he did not inquire of the plaintiff whether it was satisfactory to him for the defendant to do as he was doing. In fact, the defendant's removal of the files was made without the plaintiff's knowledge or consent.

When Mr. Henderson moved into the Failing Building he proceeded there with the practice of law and gave attention to the business which he had brought with him from the offices that he had formerly shared with the plaintiff. In completing the items of business that he brought with him he never consulted the plaintiff as to how they should be handled nor afforded him opportunity to participate in them. He did not seek a suggestion from the plaintiff as to the amount any client should be charged for the services nor report to the plaintiff upon the progress which he was making with any of the matters over which he had taken province. Some of the items had been well advanced toward completion when the defendant withdrew from the offices in the United States National Bank Building, but upon others hardly more than a start had been made.

Some of the business which the defendant took with him came from clients who had long regarded the plaintiff as their attorney; but, some was that of persons who had consulted the defendant previously, or who came to him as a result of a recommendation by a friend. No client voiced objections to the fact that the defendant had removed the files to a new

office or complained because the two men were no longer together.

During the partnership the plaintiff had given most of his time to the bank of which he was general counsel. When Mr. Henderson withdrew from the firm Mr. Platt was 84 years of age. As a witness he stated more than once that his health was good and that he was fit to remain active in the practice. He hoped, following Mr. Henderson's departure, to find a capable trial attorney and continue to serve the bank as general counsel. He viewed with disfavor the inactivity that results from retirement. He testified that in the past the bank had made to him retirement offers but that he had rejected them because "I preferred to work." A few days after Mr. Henderson withdrew and took with him a member of the staff the bank offered Mr. Platt a pension plan which appealed to him. It included the occupancy of a suite of two rooms in the United States National Bank Building and a continuance of his status as chairman of one of the bank's committees. His retention in the post of committee chairman would give him a duty to perform one day each week upon a salary basis. Mr. Platt accepted the offer and on July 31, 1952, ceased being the bank's attorney. In testifying, he mentioned a client whose business he was able to retain. During the trial he still maintained his offices in the United States National Bank Building.

Apart from one item, the foregoing delineates sufficiently for present purposes the nature of the practice conducted by the firm and the circumstances which terminated it. The additional item that needs mention is the appeal of a case entitled *Barnes v. Eastern and Western Lumber Co*. (After its appeal the case was reported in 205 Or 553, 287 P2d 929.)

It had its inception when one, Mrs. Henry A. Buehner, who with associates owned 2500 shares of stock in the Eastern and Western Lumber Co., sold the stock to four members of the corporation's board of directors: Frank H. Ransom, Charles B. Duffy, K. H. Koehler and L. A. Morrison. Shortly, Mrs. Buehner claimed that the purchasers through fraudulent representations induced her to sell the stock at less than its value. She then filed the suit entitled *Barnes v. Eastern and Western Lumber Co.,* and upon its trial recovered a judgment for approximately $1,000,000. At that juncture the attorneys who had represented Duffy, Koehler and Morrison inquired of Mr. Henderson whether he was available to appeal the judgement. Before replying he asked whether he was being selected on account of his connection with his firm and explained, "If that is true, I do not believe I can take it, because I am not certain the firm is going to continue." He was assured that his membership in the firm was not essential. After that answer was given it was agreed that the fee for services in appealing the case should be $30,000. Thereupon Mr. Henderson accepted the employment. April 23, 1952, Mr. Henderson was paid $21,200 of the agreed sum and deposited it in his personal bank account.

A provision of the partnership agreement reads:

"Each of the parties hereto shall devote his entire time and attention to the business of said law firm, and shall not engage in any other business whatsoever, either on his own account or as the agent or in partnership with any other person or persons whatsoever, but this provision shall not preclude any of the parties hereto from making his own private investments from his own private funds."

Shortly after Mr. Henderson agreed to appeal the case of *Barnes v. Eastern and Western Lumber Company* he reported the fact to Mr. Platt and told him of his receipt of $21,200 of the retainer money. He also told Mr. Platt that he had deposited the fee in his personal account. When Mr. Platt demanded that he transfer the money to the firm bank account the defendant replied that he would not do so. He concealed no feature of the transaction.

A provision of the partnership agreement reads:

"All moneys received by the partners, or any of them, on account of business originating after the first day of July, 1937, shall be immediately deposited to the credit of the partnership in The United States National Bank of Portland (Oregon) and all checks thereon shall be drawn in the name of the firm * * *."

Mr. Henderson contends that his employment to appeal *Barnes v. Eastern and Western Lumber Co.* was not firm business and that he is not required to account for the fee. He testified that he performed all of the work upon the appeal after July 7, 1952. It will be seen that the heated exchange of words between the plaintiff and the defendant occurred about three weeks before Mr. Henderson was employed to prosecute the appeal. The payment of $21,200 of the retainer took place more than two months before he left the United States National Bank Building.

The entry of a proper decree in the Barnes case, so as to afford a dependable foundation for the appeal, was essential to the contemplated appeal. The record indicates that objections to the findings which were proposed in that case and to the decree which was tendered for the trial judge's signature were

filed May 23, 1952. Mr. Henderson, as one of the attorneys for the prospective appellants, signed the objections. June 4, 1952, the trial judge signed an order overruling the objections and reciting that the defendants had appeared "by their attorneys Charles P. Duffy and Wilber Henderson of Platt, Henderson, Cram and Dickinson." Accordingly, at least that much service as quid pro quo for the $30,000 fee was performed prior to July 7, 1952, when Mr. Henderson left the firm's offices in the United States National Bank Building. When Mr. Henderson was asked in April 1952 whether he was available to appeal the Barnes case he was not uninformed concerning that item of business. United States National Bank was a party defendant in the suit and Mr. Henderson had appeared for it from the inception of the case. When the trial opened he was present and participated in it for several days until it became apparent that the plaintiffs had no cause against the bank. In the manner just indicated Mr. Henderson had acquired a good understanding of the case while he was still a member of the firm and before he accepted the responsibility of appealing the case.

Under the partnership agreement existing between the plaintiff and the defendant the latter had a drawing account which authorized him to receive on the first day of each month $750 augmented by a supplementary payment at the end of the year if the volume of business justified it. April 30, 1952, Mr. Henderson received the amount of his drawing account for April, and on May 31, 1952, received the amount due him for May, that is, $750 in each of those two months. He remained in the firm's offices until July 7, 1952, and in conducting his part of the firm's business did so under the firm name. Mr. Platt con-

tinued to deposit monthly in the firm bank account the retainer which he received from the bank.

July 26, 1952, after the defendant moved to the Failing Building he opened a special bank account and deposited in it until August 7, 1953, the fees he received from business which he took with him from the firm's offices. April 21, 1954, he discontinued the account. He concedes that he made no deposits after July 7, 1952, in the bank account described in the above excerpt which we took from the partnership agreement. Mr. Henderson deposited in his personal account all fees which he received after April 21, 1954, from former partnership business.

We will now mention the provisions of the decree which the circuit court entered and which the appeal challenges. It is necessary to return for a moment to the beginning of the trial. When the latter opened, the Honorable William G. East, circuit court judge, presided over it. By June 15, 1954, testimony had been taken which, as later transcribed, covers 485 pages. At that point the trial halted and seven days later Judge East entered a decree to which the parties refer as preliminary. It was based upon Findings of Fact and Conclusions of Law. Its opening passage is this: "Therefore it is considered, adjudged and decreed preliminarily." Judge East found that the partnership was dissolved July 7, 1952. For reasons which we will later state we share in that view. Judge East found that:

"* * * it was the intent of the Eastern and Western parties to employ the personal services of the defendant without reference to the law partnership * * *. Nevertheless, the parties hereto were at that time copartners owing a fiduciary relationship to each other. * * * When either one of the partners accepted a retainer at

a time he was then engaged in an active law copartnership, he owed a fiduciary relationship to his partner to account for the same even though he may have intended at a later time to dissolve the same."

Judge East declared further:

"* * * each of the parties is entitled to a fair and a reasonable compensation for his personal services in concluding business of the firm's clients before being required to account to his partner for one-half of the net gain from such fees, after the payment of expenses and fair and reasonable compensation aforesaid."

Shortly after Judge East had entered the preliminary or intermediate decree he was appointed to the United States District Court for Oregon and resigned from the circuit court. In the handling of this suit he was succeeded by the Honorable George R. Duncan. Then more testimony was taken. Much of the latter was a narrative of the fees that each of the two parties collected after the dissolution and the extent of the services which they performed in earning the fees; nevertheless, the evidence which was presented before Judge Duncan covered all issues of the case including the manner in which Mr. Henderson left the office and took files with him. As transcribed the testimony taken before Judge Duncan covers 389 pages. August 27, 1959, Judge Duncan entered the decree which is challenged by this appeal.

The decree entered by Judge Duncan charged the defendant with $56,315.33 which it found was the total fees he received after July 7, 1952, upon business which was pending with the firm when he left. Out of the total of $56,315.33 the sum of $29,056.66 represents the part of the fee in *Barnes v. Eastern*

*and Western Lumber Co.* which was received by Mr. Henderson. The decree entered by Judge Duncan charged the plaintiff with $4,591.99 for fees received by him subsequent to December 31, 1952, and with $516.05 as the balance due from him for books and equipment that had belonged to the firm. Possibly, the fact that the bank's monthly retainer checks ceased on August 1, 1952, and that fees received by Mr. Platt prior to December 31, 1952, were deposited in the firm's bank account explains why he was charged with no more than $4,591.99. The plaintiff was directed by the decree to pay the sums just mentioned into the registry of the court. The defendant was directed to pay into the registry one-half of the aforementioned amount of $56,315.33. At the time of the entry of the decree the firm's bank account and its special clients' account held balances of $11,212.20 and $497.49 respectively. The decree ordered the bank to pay those sums into the court's registry. It found that the firm was indebted to three individuals, whom it named, in the total of $872.10. It also found that the firm owed the plaintiff $5,125 upon (a) his drawing account, (b) the return to him of his capital contribution and (c) wages for employees which he had paid out of his personal funds. Further, it found that the firm was indebted to the defendant in the sum of $5,522.90 upon (a) a firm debt which he had paid out of personal funds, (b) his drawing account for June, (c) contingent drawing amounts for six months ending in June, 1952, (d) the defendant's capital contribution and (e) other sums which the defendant had paid with his own funds to firm creditors. The decree held that both parties were entitled to compensation for their work in completing the firm's business. It ruled that the plaintiff should be paid

an amount equal to one-third of all that he had collected in the completion of the firm's business that was incomplete when Mr. Henderson left and determined that that amount was $3,008.66. It found that the defendant should likewise be compensated with one-third of all sums received by him for completing firm business with the exception of his work in the Barnes case for which it held that he was entitled to two-thirds of the fee. It found that the total payable as compensation for the defendant's services was $28,373.99. The decree ordered the defendant to pay interest at the rate of 6 per cent upon the following amounts:

"* * * on $9,685.55 at the rate of 6 percent per annum from April 23, 1952, and interest on $1,895.96 at the rate of 6 percent per annum from January 1, 1953, and interest on $8,333.82 at the rate of 6 percent per annum from April 22, 1954, and interest on $6,776 at the rate of 6 percent per annum from July 17, 1956, and interest on $1,166.67 at the rate of 6 percent per annum from January 23, 1958, and together with the further sum of $95.50 owing for furniture. * * *"

The brief submitted to this court by the appellant (Mr. Henderson) declares:

"The questions presented are, viz;

"1. In view of the fact that there was competent evidence offered and received as to the reasonable value of the services rendered did the Court err in deciding such issue of reasonable value on the arbitrary basis of a percentage (one-third) of the amount collected notwithstanding the fact that each piece of business was at a different state of progress when the dissolution took place and each unfinished piece of work bore a different relationship to the whole?

"2. Did the Court err in adjudging that de-

fendant should pay interest in view of the fact that any amount owing by him to the firm was unliquidated and the amount due the firm under the preliminary decree could only be ascertained after the reasonable compensation for the completing of the work had been determined and payment of costs incident thereto had been determined and allowed?"

The brief submitted by the respondent (Mr. Platt) states:

"* * * The principal questions presented relate to (1) compensation, if any, to be paid to the partners, (2) interest to be charged on moneys appropriated by the defendant, and (3) whether certain other pieces of business are firm assets. Other minor matters are referred to in appellant's brief."

██ The first issues submitted by the appeal which we will consider is whether the partnership was dissolved March 26, 1952, in the course of the heated dispute, or July 7, 1952, when the defendant left the firm's offices and moved to his new quarters. The defendant contends that the partnership was ended March 26. Judge East found that the defendant withdrew on July 7, 1952, and Judge Duncan took the same view. The firm's staff of employees consisting of four attorneys and five secretaries, all of whom served upon a salary basis, was carried through to July 7, 1952, without receiving any intimation, so far as we can discern from the record, that the firm was dissolved on March 26, 1952, if in fact a dissolution occurred on that day. We think that an inference is warranted that up to July 7, 1952, checks for salary, rent and other expenses were drawn upon the partnership account and that the defendant would not have permitted that to occur if

the partnership was dissolved March 26, 1952. Likewise, fees received by the defendant, except the one in the Barnes case, were deposited up to July 7, 1952, in the partnership account. We have mentioned that the defendant availed himself of his drawing account at the end of April and of May. His action in so doing constituted recognition that the firm was still subsisting and had not been dissolved. He likewise continued in the firm's offices and handled business such as the Barnes case in the firm name, as we saw through quotation from the record. In his allocation, from the witness stand, of the fees that he received after he left the firm he selected July 1 or July 7, 1952, and not March 26 as the crucial day. We are satisfied that the firm was dissolved July 7, 1952, and not March 26.

The plaintiff and the defendant were honest and truthful about the fees which they received and the expenses which they discharged. It is to their credit that the long transcript of testimony covering 875 pages of typewritten material and the scores of exhibits did not develop any issues as to honesty or veracity nor as to the total of any fee that had been received or the amount of a firm debt. The most important issue that developed concerned the amount of compensation, if any, which should be awarded to the defendant for his services in completing the items of business which he took with him to his new offices on July 7, 1952.

The issue which we must resolve is whether the defendant is entitled to special compensation for the work he performed in completing firm business that he took with him to his new offices. The plaintiff contends that Mr. Henderson is entitled to no compensation for the completion of that business except

the compensation that will come to him when all of the fees which he and the plaintiff now possess, together with the money in the firm's bank account, is divided equally between them at the close of this case. The plaintiff calls attention to the fact that while the two men remained partners neither received or expected special compensation for handling partnership business. He argues that Mr. Henderson could not improve his condition by withdrawing from the firm and taking to his new offices, without the plaintiff's knowledge or consent, whatever items of business he selected from the firm's files, and by eventually sending to the client a bill for the services rendered without even mentioning the matter to the plaintiff.

The defendant submits that for the time and attention which he devoted to the completion of the firm's business he is entitled to reasonable compensation. It will be remembered that the preliminary decree entered by Judge East contains this ruling: "Each of the parties is entitled to a fair and reasonable compensation for his personal services in concluding the business of the firm's clients." Judge Duncan, who completed the trial of the case after Judge East's retirement, made, as we have seen, the ruling which awarded each partner a one-third interest in any fee paid for an item of business which that partner completed after July 7, 1952, except the item known as *Barnes v. Eastern and Western Lumber Co.* Judge Duncan awarded the defendant (Henderson) a two-thirds interest in that fee. The defendant contends that his former firm is entitled to the part only of any fee which represents the work performed by the firm on that item of business before the firm was dissolved. He argues that since he alone performed all of the other work upon the item of business which

brought the item to completion he is entitled to all of the remainder of the fee. According to him, a fee, unlike an article of merchandise, contains no element of profit for any one and is nothing more than remuneration for services performed. He therefore argues that no one should receive any part of a fee except the attorney who performed the services for which it was paid. Since no other member of the former firm performed any work after July 7, 1952, upon the items of business that the defendant took to his new offices he claims that the plaintiff can have no legitimate interest in any part of the fee that was paid for work performed after July 7, 1952. To illustrate the manner in which the defendant allocated to his former firm and to himself the fees that were paid for work which was pending July 7, 1952, and which he completed after that day we will assume that (1) the defendant was paid $1,000 as the fee for an item of business which was pending in the firm offices July 7, 1952, and which he later completed, (2) the firm had devoted to the item of business 20 hours before the defendant left the firm July 7, 1952, and (3) the defendant devoted to the item 80 hours after July 7 and thereby completed it. Under the circumstances just assumed the defendant submits that the firm should have $200 of the $1,000 fee and he should have the remaining $800. We add that upon the division of the fees that will occur upon the termination of this suit the defendant will receive one-half of the $200, assuming that his allocation is approved.

The defendant kept scant time records; therefore, his allocations of the time element were largely based upon estimates.

In stating the above facts we have assumed that the work which the plaintiff and the defendant per-

formed after July 7, 1952, was of the kind commonly termed "winding up." It consisted of completing, to the extent that was possible, matters that were incomplete when the partnership was dissolved. But the purposes of the two former partners were not confined to a winding up. Each desired to continue active in the practice of law. When the plaintiff gave some of his testimony, four years after the dissolution, he still maintained an office and still had as his secretary the faithful woman who had been with him for two score years. When the defendant quit the firm offices he did not envison a retirement from the practice. To the contrary, he immediately formed a new firm, opened new offices and moved into them a large part of the files of his former firm. In effect he moved into his new offices a part of the old firm's business. He very likely viewed the transferred files with gratification and felt that they would ward off any intimation that he was a briefless lawyer. Although the various items of business which the defendant took under his province on July 7, 1952, could well be deemed a continuance of his practice, we will deem that the work which he performed upon them after July 7 was for wind up purposes.

The question now occurs: was the defendant entitled to special compensation for the service which he performed after July 7, 1952, in bringing to completion the items of business which he took with him upon that date when he left the firm offices and moved into his own. All of that business had not yet been fully completed when the decree was entered. We have seen that the circuit court's decree found that the defendant received $56,315.33 in fees from those pieces of business and ordered him to pay one-half of that sum into the registry of the court. It

also found that the plaintiff had received after December 31, 1952, a total of $4,591.99 fees upon partnership business. The plaintiff had deposited in the firm bank account all fees he had received prior to December 31, 1952. Since the firm bank account held no more than $11,212.20 it is evident that the plaintiff's receipts were far less than the defendant's. The disparity may possibly be due to the fact that the defendant took with him the files which yielded the larger fees and thereby deprived the plaintiff of access to that remunerative business. The plaintiff testified that he devoted much time after July 7, 1952, to acquainting the attorneys who succeeded him as counsel for the bank with items of business to which they were giving attention.

The matters from which the defendant received $56,315.33 in fees were represented by the files which he took with him and consisted of completing contracts with clients into which the firm had entered prior to its dissolution. The contracts were the firm's engagement with various clients to represent them in matters which required a lawyer's special knowledge and skill. Following the dissolution of the partnership the defendant completed those items and for so doing the clients paid him the sum just mentioned— $56,315.33. At the conclusion of the suit which we are now considering, if no special compensation is awarded, the net amount held by the two partners and the bank will be divided equally between the two partners; but the defendant urges that he is entitled to special compensation for the work that he performed in completing the contracts or engagements that we have mentioned.

■ Upon dissolution a partnership is not actually terminated. It remains in effect for the completion

of all of its undertakings. ORS 68.520 (§ 30 Uniform Partnership Act) states: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

■ The surviving partner or partners upon dissolution must complete all of the firm's executory contracts: 40 Am Jur, Partnership, § 301, page 339; and 68 CJS, Partnership, § 352, page 860. That rule is inevitable; dissolution of a partnership does not free its members from their obligations: ORS 68.520 (§ 30 Uniform Partnership Act). Dissolution, according to ORS 68.580 (1) (§ 36 Uniform Partnership Act) "does not of itself discharge the existing liability of any partner." The section of American Jurisprudence just cited states:

> "Thus, on the death of a member of a partnership of attorneys at law the client may elect to consider the employment as terminated * * *. But the option of terminating the contract for such a cause is with the client alone, and the surviving partners are bound to proceed unless the client elects that they shall not do so."

See to the same effect *Felt v. Mitchell*, 44 Ind App 96, 88 NE 723. We noticed that upon dissolution of the partnership no client elected to terminate his contract with the two former partners. Accordingly, the plaintiff was as much bound to complete the engagements of the former firm as was the defendant.

■ ORS 68.590 (§ 37 Uniform Partnership Act) provides that unless an agreement to the contrary was made, "the partners who had not wrongfully dissolved the partnership or * * * [have] the right to wind up the partnership affairs." The plaintiff, therefore, had a right equal to the defendant's to participate in the wind up. ORS 68.310(5) § 18(e)

Uniform Partnership Act) provides: "All partners have equal rights in the management and conduct of the partnership business."

When the defendant moved the files representing business that was pending in the firm's offices on July 7, 1952, to his newly opened quarters he effectively barred the plaintiff from participating in that business. We saw from the sections of our laws which we cited that the plaintiff had a right equal to the defendant's to participate in that business. We also saw that it was the duty of the defendant as much as it was the duty of the plaintiff to complete all of those transactions. The plaintiff shortly wrote to the defendant letters protesting over the course which the defendant was taking. One of his letters stated in part:

"All business that was on the firm books on July 1, 1952, was common property, and where completion was necessary, it was the obligation of all office members to complete the unfinished work."

In still other letters the plaintiff protested over the defendant's refusal to deposit in the firm account the fees that he was receiving from time to time, and through quotation from a legal treatise directed attention to the fact that ordinarily a partner is not entitled to compensation for his services in winding up the firm affairs after dissolution. He further notified the defendant that he would expect the payment of interest upon all fees that the defendant had received and which he had not deposited in the firm's account.

██ The defendant, however, contends, as we have stated, that he is entitled to special compensation for the work that he did in completing the items of busi-

ness that he took with him to his new offices. It is well established that in the absence of agreement to the contrary each partner is required to give to the firm all of his time, skill and ability. In the present instance the articles of co-partnership which were signed when the three men organized the firm demanded of each of them full time, ability and skill. ORS 68.310(6) (§ 18(f) Uniform Partnership Act) states: "No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs." The defendant can not be deemed a surviving partner. The rule against special compensation is not inflexible. Unusual services may call for special compensation. *Jewell v. Harper,* 205 Or 1, 285 P2d 133. In this case the defendant, by taking to his new offices the files in approximately forty items of business that produced more than $56,000 income, barred the plaintiff from doing anything whatever toward performing the legal services for which the defendant asks us to award him the major part of those $56,000 of fees. It will be recalled that when the firm was dissolved the plaintiff remained prepared to transact law business and that he notified the defendant in writing that both of the former partners were in duty bound to fulfill all of the firm's undertakings.

40 Am Jur, Partnership, § 246, page 301, states:

"The wrongful or forcible exclusion of one partner from the place of business of the partners, or, the exclusion of one partner by another from the management of the partnership business or the possession of partnership property, where in contravention of the articles of partnership, is a cause for which a court of equity may decree a dissolution of the partnership. * * * Where a partner

without the consent of his copartner applies partnership funds to the payment of an individual debt or collects money belonging to the partnership and appropriates the same to his own use without accounting to the copartner, dissolution is also warranted."

We take the following from 68 CJS, Partnership, § 349, page 857:

"* * * there may be a judicial dissolution where one partner excludes the other partner or partners from participation in the management of the business of the firm * * * and proceeds to conduct the partnership business as his own individual business * * *."

*Mills v. Williams,* 113 Or 528, 233 P 542, adopted and applied the rule just mentioned. It held:

"* * * We believe the evidence justifies the finding that the conduct of the defendant in taking over active management of the partnership affairs and practically ousting the plaintiff from further participation in the partnership business amounted to a dissolution of the partnership in view of the conduct of the plaintiff thereafter. * * *"

We take the following from Mechem, Elements of Partnership, 2d 3d, § 178:

"If one partner is thus ordinarily not entitled to extra compensation for his services, it is all the more clear that he will not be so entitled where he has wrongfully excluded his partner from participation in the business."

Mechem cites as support for his statement *Hannaman v. Karrick,* 9 Utah 236, 33 P 1039, in which one partner forcibly ejected the other from the mercantile enterprise which the firm was operating, and later, after carrying on the business himself for a while,

sold it. The decision, in holding that the defendant's conduct authorized dissolution, said:

"* * * But it would scarcely seem to come within the principles of justice to permit one partner to expel another from a profitable business for some real or fancied wrong or mismanagement, and then continue the business himself, and profit by his own wrong, responsible only in damages. * * *

"The views thus expressed have the apparent support of most elementary writers, and seem to be in conformity with the doctrine prevailing in England. The contrary doctrine, if not indefensible, is founded on reasons exceedingly artificial. It is based on the ground that one partner has the rights to found his claim, real or otherwise, to immediate safety and indemnity on an obvious injury to the interest and rights of another, which is alike inequitable and unjust; and we think it is not supported by the weight of authority. * * *"

In *Poole v. Schrichte,* 39 Wash 2d 558, 236 P2d 1044, the plaintiff and the defendant owned and operated a tavern. The court, in referring to their relationship, said: "The evidence establishes here a joint venture if not a partnership between the parties." Later the defendant excluded the plaintiff from participation in the management and operation of the tavern. We now quote from the decision:

"Mr. Schrichte chose to exclude Mrs. Poole from any voice in the operation of the tavern, and that she has made no contribution to its operation since October 1947 is his fault, not hers. We would therefore not have allowed him the sum of $1,372 with which the trial court credited him for his services to the joint venture in the operation of the tavern.

* * *

"Mr. Schrichte urges that the trial court having

found that he was entitled to $39.80 a month for his services in the operation of the tavern and Mrs. Poole, not having appealed from that finding, the law of the case is that he is entitled to compensation for his services to the joint venture; and that it is obvious that $39.80 a month is an arbitrary and not an adequate allowance, and since he is entitled to compensation the case should be remanded for the taking of evidence as to the value of his services. The argument is that we should not only perpetuate what we conceive to be error in allowing Mr. Schrichte any compensation for his services, but we should remand the case so that the error might be augmented."

*Einstein v. Schnebly,* 89 F 540, declares:

"The rule of law as to the powers of the members of a partnership in the conduct of its business has been correctly stated thus:

" 'In the absence of an express agreement to the contrary, the powers of the members of an ordinary partnership are in all respects equal, even although their shares may be unequal; and there is no right on the part of one or more to exclude another from an equal management in the concern. * * * Indeed, speaking generally, it may be said that nothing is considered as so loudly calling for the interference of the court between partners as in the improper exclusion of one of them by the others from taking part in the management of the partnership business. * * *' "

Much more could be quoted to the same effect as the above. Unless a partner agrees that he shall not participate in the management of the enterprise he can not be deprived of his right to take a part in it.

The record clearly establishes that the defendant wrongfully barred the plaintiff from participating with him in earning much, if not all, of $27,258.67 of fees ($56,315.33 less $29,056.66). We recognize that a

client has a right to select the attorney he prefers to serve him and that a member of a firm can not force himself upon a client of the firm merely because he is a member of that partnership. Accordingly, the plaintiff could not have insisted, against the protest of any client, upon representing the client if the latter preferred the defendant. But, apart from possibly three items of business which are included in the above total of $27,258.67, we are aware of nothing disclosed by the record that indicates that any of the clients who paid the total of $27,258.67 of fees voiced a preference for the defendant. Nothing was said by any of them which indicated that the defendant was unsatisfactory. In some instances the entire fee had been paid or virtually all of the services had been rendered prior to dissolution. Under the circumstances revealed by the evidence we are satisfied that the defendant is not entitled to special compensation for any part of the services which he performed in the wind up. His wrongful conduct in taking from the firm offices the firm files without making any effort whatever to agree with the plaintiff upon the manner in which the pending business should be completed precludes him from special compensation.

The defendant argues that he should not have been charged by the challenged decree with interest upon fees which he collected for business which was pending in the firm offices July 7, 1952, and which he collected after that time but did not deposit in the firm's bank account. The defendant frankly concedes that he deposited some of those fees, such as that in the *Barnes v. Eastern and Western Lumber Co.*, in his personal bank account and later spent the money in making investments or employed it for other pur-

poses. For approximately one year after the dissolution of the firm the defendant maintained a special bank account and deposited in it fees from firm business as they were received. Nine months later he discontinued the account and deposited the fees in his personal account.

The basis of the defendant's objection to the interest feature of the decree was stated by him in these words when he filed objections to the decree in the circuit court.

"* * * said decree is erroneous in making an allowance of interest first in that there is no statutory or contractual basis for the allowance of interest on the monies involved in this suit, and secondly, that the monies involved are not fixed, determined and liquidated until the same are fixed by a decree herein."

ORS 82.010 provides:

"(1) The legal rate of interest is six percent per annum and is payable on:

"(a) All moneys after they become due * * *."

The defendant's contention that interest is payable upon money only after the sum becomes "fixed, determined and liquidated" is met by the fact that when he received the fees he should have deposited them then and there in the firm's account. The other contentions of the defendant are based upon his use of an erroneous copy of the decree which unfortunately was made a part of the abstract of record. Neither party discovered that the decree as printed in the abstract of record recites many sums and other entries that are not a part of the decree which bears Judge Duncan's signature. The sums that are subject to interest as set forth in the abstract of record are manifestly erroneous. We feel certain that the defendant

(appellant) included the erroneous copy of the decree in the abstract of record inadvertently. Some of the sums which are a part of the decree bearing Judge Duncan's signature (the latter is included in the judgment roll) appear to be too small, but no motion was made in the circuit court to correct them and none has been presented to us. The cross appeal does not mention those sums. A previous paragraph of this opinion which quotes the paragraph of the decree which pertains to interest was copied from the decree bearing Judge Duncan's signature. We are bound by it. But the defendant-appellant, in complaining about the amount of interest, uses the erroneous copy of the decree which he included in the abstract of record. We can not sustain the defendant's contentions concerning the award of interest.

■ The respondent (Platt) in cross appealing submits as an assignment of error:

"The court erred in not requiring the defendant to account for appeals taken in cases which had been pending in the office at the time of dissolution of the partnership."

In support of that assignment of error the plaintiff argues: "An appeal to a higher court is not the bringing of a new proceeding." This court does not employ that view. In *In Re Grimes' Estate,* 170 Or 204, 131 P2d 448, Mr. Justice BAILEY, on behalf of the court, stated at page 219:

"* * * An appeal to the supreme court has many times been held to be a new proceeding, separate from the trial in the circuit court: Shirley v. Birch, 16 Or. 1, 18 P. 344; Kelley v. Pike, 17 Or. 330, 20 P. 685; Service v. Sumpter Valley Railway Company, 88 Or. 554, 581, 171 P. 202; Brown v. Ritterman, 156 Or 405, 67 P. (2d) 774. * * *"

We have given careful attention to all of the contentions of the parties. The above, we believe, suffices as a disposition of the controversy. The decree which the circuit court will enter upon our mandate will award no special compensation to either of the parties for the part which they took in the wind up. Special compensation is withheld from the defendant on account of his arbitrary action in depriving the plaintiff of all opportunity to share in the work for which he (the defendant) seeks special compensation. We likewise allow no compensation to the plaintiff. All other parts of the decree are affirmed.

Affirmed as modified.