Argued September 13, affirmed December 28, 1977

# OSWALD, *Respondent/Cross-Appellant,*
## v.
# LECKEY, *Appellant/Cross-Respondent.*
## (No. 404-491, SC 24559)
### 572 P2d 1316

James C. Goode, Judge Pro Tempore.

Marvin S. Nepom and Frank E. Magee, Portland, argued the cause and filed briefs for appellant/cross-respondent.

Gregg C. Sayre, Portland, argued the cause for respondent/cross-appellant. With him on the brief was Marvin S. W. Swire, Portland.

Before Denecke, Chief Justice, Bryson and Linde, Justices, and Gillette, Justice Pro Tempore.

BRYSON, J.

BRYSON, J.

This is a suit in equity wherein both parties seek an accounting upon the dissolution of their partnership. On January 1, 1966, plaintiff and defendant, certified public accountants, executed a partnership agreement to conduct an accounting practice. Each partner had his own accounts prior to the partnership, and this practice seems to have continued, after forming the partnership, with each partner billing the clients he served. The partnership was not harmonious, and at least four notices of termination were served in the last two and one-half years. However, both parties agree that the partnership was terminated on June 30, 1968.

This suit concerns the method of liquidation and the share of the $9,305.26 in cash, with interest, in a bank account and certificate of deposit which each partner will receive.

The trial court found, after an accounting, there was "a partnership account balance in the sum of $9,305.26, on August 7, 1972 and the parties * * * agreed that a fair and proper interest rate to be charged defendant upon said sum, commencing with August 7, 1972 is 5% per annum." The court decreed "[t]hat plaintiff * * * recover * * * from defendant[1] 64.68% of $9,305.26, to wit, $6,018.64 plus interest thereon at the rate of 5% per annum from August 7, 1972 until paid * * *."

The defendant appeals and plaintiff cross appeals. The only witnesses called to testify were plaintiff and defendant.

Both parties agree that each partner is entitled to

[1]The record shows the defendant withdrew the partnership funds (cash) from the savings account and placed it in a new savings account and certificate of deposit and he had possession of the deposit book and certificate of deposit. Therefore, the decree provides that "plaintiff recover from defendant."

one-half of the partnership net income in accordance with the partnership agreement.[2]

The original pleadings in this case made no specific demands but asked for an accounting. After the accounting, both parties submitted briefs with written argument or contention. These briefs really constituted the pleadings upon which the trial court based its decision. Both sides suggested various additions to and deductions from gross income to reach net income for the period January 1, 1968, to June 30, 1968, the date of termination of the partnership. At issue on appeal is the validity of various deductions from gross income submitted by defendant Leckey.

Neither party is satisfied with the trial court's determination as to which items should be allowed or disallowed in reaching the net income of the partnership for the period involved. The respective assignments of error by both parties are directed to the allowance or disallowance of various items as decided by the trial court. The first item in contention is defendant's "write-down"[3] of several accounts he serviced. Defendant collected $4,610.85 less on these accounts than the books showed was due. The trial court disallowed this deduction. The partnership agreement does not specify the responsibility of partners in collecting partnership debts. Thus, this issue must be decided by the general principles of partnership law.

■ Partners have authority to make compromises with partnership debtors, even after dissolution. *Platt v.*

---

[2] "* * * Begining in 1968 and thereafter, the partnership profit to be divided as follows: the first $50,000.00 to be divided equally * * *."

[3] An account is said to be "written down" when the amount billed is less than the amount due as shown on the books. There is testimony that the amounts due as shown on the partnership's account books were not necessarily the amounts the partners billed. The book entry was based on the number of hours worked. If the partners felt that the service rendered was not worth that amount, they would charge less ("write down"). In addition, in order to equalize the monthly bills they would charge more ("write up") or less than the books showed and make up the difference in later months.

*Henderson,* 227 Or 212, 232-33, 361 P2d 73 (1960). This power to compromise claims is stated briefly as follows:

> "A partner may receive payment of obligations due to the partnership, may compromise with firm debtors, and release them. * * *" Crane & Bromberg, Law of Partnership 456, § 80 (1968). (Footnotes omitted.)

So defendant had the power to compromise claims, but in exercising this power he had to follow the fiduciary duty imposed on him as a partner, "to act with the utmost candor and good faith." *Delaney v. Georgia-Pacific Corp.,* 278 Or 305, 310, 564 P2d 277 (1977); *Fouchek v. Janicek,* 190 Or 251, 273, 225 P2d 783 (1950). Although defendant testified that his "write downs" were consistent with his past practices and with good practice, he also testified:

> "Q. And in your opinion, knowing these clients, what would have happened if you had billed it out at the amounts that you had written off?
>
> "A. Well, these are clients that were under my responsibility and that came with me when I left the partnership. And I would have been out a substantial number of clients and future work, future income."

In other words, in adjusting downwards the amounts due for work in progress, defendant was partly motivated by a desire to retain certain clients. This falls far short of the duty of good faith imposed on partners. We conclude, as did the trial court, that defendant ought to pay the partnership the difference between the amount stated on the books and the amount actually collected by defendant on these accounts.[4]

[4] Defendant testified that on some of these accounts, he had previously agreed with the client to perform accounting services at fixed monthly rates. If defendant had shown at trial that he collected only the full monthly rate from these clients, then he would not be liable to the partnership for the difference between the amount collected and the amount shown due by the books. The reason is that he would have collected all that he could collect from those clients. However, defendant did not specify these accounts at trial and he did not offer evidence sufficient to prove that he did collect only the fixed monthly rates. Therefore, he failed to show good faith rather than a desire to further his interests with certain clients for the period following dissolution, June 30, 1968.

The trial court allowed defendant's three other deductions. Plaintiff cross appeals from these allowances. One deduction is in the amount of $1,424 for uncollectable accounts. As discussed above, a partner has the power to wind up the partnership's affairs. This power includes the power to abandon uncollectable accounts, subject, of course, to the partner's fiduciary duty. Plaintiff argues that defendant had a conflict of interest as to these accounts, similar to his conflict of interest as to the adjustments to work in progress. However, no such conflict appears in the record. On the contrary, defendant testified that the accounts were, in fact, uncollectable despite his best efforts to collect them. This testimony was not contradicted. We are persuaded that defendant wrote off these accounts in good faith. We conclude, as did the trial court, that defendant was not required to account to the partnership for such uncollectable accounts.

The other two deductions are for salary and vacation time owed by the partnership to its employees but paid by defendant. As to this issue, it is uncontradicted that several of the partnership employees, who continued to work for defendant after the dissolution, had accrued overtime and vacation time during the first half of 1968, while working for the partnership. Defendant paid them the sums due, and the trial court gave defendant credit for those sums. The trial court's action was correct under ORS 68.600(1), which provides in part:

> "(1) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them * * * may have the partnership property applied to discharge its liabilities * * *."

and ORS 68.310(2), which provides:

> "(2) The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property."

Plaintiff does not argue that the employees were not entitled to be paid. Instead, he contends that defendant was again acting under a conflict of interest in that defendant obtained the good will of the employees after he paid them and so it is inequitable to charge the salary expenses to the partnership. Since, however, the partnership owed the debt, this argument is not convincing.

■ Plaintiff also asserts that defendant is estopped from claiming an allowance for payment of overtime or vacation salaries to the partnership employees and that defendant is guilty of laches in not advising the plaintiff of such payments within a reasonable time. There is no evidence to show that plaintiff was prejudiced by delay, if any, or that plaintiff relied on any assertion by defendant that the salary was not owed to the partnership employees. Further, plaintiff did not plead estoppel or laches. *See Reed v. Commercial Ins. Co.,* 248 Or 152, 154, 432 P2d 691 (1967); *Brusco v. Brusco,* 241 Or 550, 553, 407 P2d 645 (1965). *Compare Farley v. United Pacific Ins. Co.,* 269 Or 549, 525 P2d 1003 (1974). Costs to neither party.

Affirmed.