970 A.2d 908

Miguel GONZALES

v.

STATE of Maryland.

No. 102 Sept.Term, 2008.

Court of Appeals of Maryland.

May 7, 2009.

516

518

Piedad Gomez, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for Petitioner.

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, Judge.

Miguel Gonzales hired private attorney, Spencer Gordon, to represent him on charges of first degree burglary. Mr. Gordon did not show up on the day of Gonzales' trial; instead, he sent his law partner, Marshall T. Henslee. At issue in this appeal is whether the Circuit Court for Baltimore County erroneously found that Mr. Gonzales knowingly and voluntarily chose to discharge his attorney and waive his right to counsel as permitted by Maryland Rule 4–215(e). Specifically, we must determine whether the Circuit Court complied with the Rule when requiring Gonzales to either proceed to trial with Mr. Henslee or proceed *pro se*. We shall hold that because Henslee was not Gonzales' attorney, the court improperly applied Rule 4–215(e).

I.

Gonzales was charged in the Circuit Court for Baltimore County with first degree burglary. Initially, an attorney from the Office of the Public Defender entered his appearance to represent Gonzales. Thereafter, Gonzales retained a private attorney, Spencer Gordon, to represent him. Mr. Gordon entered his appearance as Gonzales' attorney via a letter to the Circuit Court for Baltimore County which requested that the court "enter the appearance of Spencer Gordon and Henslee & Gordon, LLC, Attorneys at Law ... on behalf of Defendant, Miguel Gonzales."

Gonzales' trial was postponed prior to Gordon becoming Gonzales' attorney because Gonzales did not show up for trial

at the scheduled time. Once Gordon entered his appearance on behalf of Gonzales, he informed the trial court that Gonzales had not appeared at the previously scheduled trial because Gonzales had been hospitalized. A new trial was scheduled for July 19, 2006. Again, Gonzales failed to appear for trial and as a consequence, the trial court issued a bench warrant for his arrest. Thereafter, Gordon filed a motion to strike his appearance as Gonzales' attorney. Later, however, Gordon withdrew this motion and represented Gonzales at an October 23, 2006 pre-trial hearing.

After two subsequent postponements, Gonzales' trial commenced on January 16, 2007.[1] Gordon did not show up to represent Gonzales on this date. Instead, Gordon's law partner, Henslee, appeared on Gonzales' behalf. The following colloquy between the court, the Prosecutor, Gonzales, and Henslee transpired[2]:

THE COURT: Where are we going now? You two want to talk to me?

PROSECUTOR: Your Honor, we're, we're gonna bring th[e] Defendant out and I guess we're gonna see what he wants to do. My understanding is, in talking to Mr. Henslee, he may, he may request to fire him. I'm not quite sure. Represent himself. The State is prepared, I'm waiting for my victim to be here, but we're ready to go to trial today. All of the witnesses are present and basically I want to do an election and find out where we are.

\* \* \* \*

HENSLEE: Your Honor, just to sort of give you a background, it would seem like the first issue that we would

---

1. One postponement was due to the fact that the court had sent information regarding the trial date to an incorrect mailing address. The other occurred because the State requested the services of an interpreter. At his trial on July 16, 2007, Gonzales asserted on the record that he did not need or want such services.

2. The colloquy is taken directly from the trial transcript and contains various grammatical errors. It appears in this Opinion with only minimal edits.

need to address in this case is that Mr. Gonzales has now made it clear two times, once to my partner Mr. Gordon and once to me, that, well actually what he said was that he had hired another attorney. I, I don't have any information about that, and nobody has been here today. Mr. Gonzales basically told me that if the attorney that he had talked to didn't show up today he would want to go forward and represent himself. I am ready to try the case. I've generated voir dire, in case it's a jury trial, and happy to pass that along to Mr. Gonzales if he chooses to go forward by himself. And I'm sort of, if he wants to fire me then I'll be happy to head back to my office. But if you want me to stay, I'll do that as well.

THE COURT: Thank you very much. Mr. Gonzales, you've heard what counsel has placed on the record in this case. What is your position?

GONZALES: My position is, Your Honor, first of all on the 30th of October Judge Turnbull told (INAUDIBLE) postponing that I don't need no interpreter. I been in Baltimore City 27 years, I don't need no interpreter. So they postpone my case back again. That's the eight time postpone my case. I wanna finish the case last month and they haven't finish my case. I just want a jury trial today. I want to represent myself. I call my lawyer Mr. Gordon.

THE COURT: Wait a minute. Wait a minute. Wait a minute. Wait a minute. The first question I have is do you want Mr. [Henslee], do you want counsel to represent you?

GONZALES: He's not my lawyer.

THE COURT: Yes he is. He's your lawyer til I say he isn't.

GONZALES: I, I—

THE COURT: Do you understand that part?

GONZALES: Well he's the, he, he represent the firm that, both Gordon and him. Gordon is the one that I speak to him all the time about my case.

THE COURT. Yea. Well that's not my question to you.

GONZALES: Yes.

THE COURT: Right now he's here at the trial table. He's ready to go to trial. He's your lawyer. And until I let him out of the case, he doesn't go anywhere.

GONZALES: Okay.

THE COURT: Doesn't, makes no difference what you say.

GONZALES: I understand.

The COURT: Good. I'm glad we understand each other. Now, are you saying that you would like to represent yourself?

GONZALES: Yes.

THE COURT: Do you realize that the attorney is a very experienced criminal attorney? He can be of invaluable assistance to you in this case, but I will not force you to go to trial with someone you don't want to be your attorney. But he is of great experience and can be of invaluable assistance to you. Do you understand that?

GONZALES: Yes.

The COURT: Okay. What is the charge on the indictment [Prosecutor]?

HENSLEE: First degree burglary Your Honor.

PROSECUTOR: Burglary Your Honor.

HENSLEE: —is the top count.

THE COURT: The maximum sentence is 20 years incarceration. Is that correct counsel?

PROSECUTOR: That's correct.

THE COURT: Do you understand that—

GONZALES: Yes.

The COURT: ... The maximum sentence is 20 years. And you want to go to trial in front of a jury in Baltimore County without an attorney, knowing that you have a 20 year sentence you're facing?

GONZALES: Yes.

THE COURT: How old are you?

GONZALES: 46, 56.

THE COURT: 56?

GONZALES: Yes.

THE COURT: All right. And you can read and write the English language?

GONZALES: Yes.

THE COURT: Have you ever been under the care of a psychiatrist?

GONZALES: No sir.

THE COURT: How far did you go in school?

GONZALES: Eleventh grade I graduate.

THE COURT: And have you had any drugs or alcohol in the last 24 hours that would affect your understanding of what's going on today?

GONZALES: Yes, I don't use any drugs.

THE COURT: Pardon?

GONZALES: No.

THE COURT: Good enough. And no one's promised you or forced you to get you to proceed without an attorney?

GONZALES: No sir.

THE COURT: Good enough. And that is your desire to represent yourself in these proceedings?

GONZALES: Yes.

THE COURT: All right. You understand that we're going to trial today. We're gonna start picking a jury this morning.

GONZALES: Yes.

THE COURT: And you wish to represent yourself?

GONZALES: Yes.

THE COURT: And you know that you are facing a maximum sentence of 20 years?

GONZALES: Yes.

Gonzales represented himself and the jury found him guilty of first-degree burglary. Approximately one week after the verdict was rendered, Gonzales wrote a letter to the trial court that stated:

I was advised by your Honor to file a motion for a new trial within 10 days due to the circumstances of my lack of representation, my lawyer [Gordon] decided to send one of his associates to represent me but this associate knew nothing about my case and in no way could effectively represent me. At that point; I felt I had no choice but to represent myself. I have paid out $2000.00 to Mr. Spencer Gordon. Mr. Gordon has all my legal papers and was to summon witnesses on my behalf. I received no results from Mr. Gordon, I spoke to Mr. Gordon as to the reason he did not show up in court, his reply was simply that he had something else to do. I called Mr. Gordon several times. The final time on 1/23/07 at 3:15 pm I spoke with Mr. Gordon and I asked him to help me file the motion for new trial since I did pay him and he hasn't produced any results; Mr. Gordon stated that it was nothing he could do for me unless I paid him or other lawyer $1000.00 more and then hung up the phone on me. . . .

The Circuit Court treated Gonzales' letter as a motion for a new trial and denied the motion. Gonzales was subsequently sentenced to ten years in prison.

Gonzales appealed, making three arguments. First, he argued that the trial court wrongfully violated his Sixth Amendment right to the lawyer of his choice. Second, he argued that under the circumstances of his case, his decision to proceed without counsel was not voluntary. Finally, he contended that the trial court violated the mandate of Rule 4–215(e), which requires a court to allow a defendant to explain his or her request to discharge counsel. The Court of Special Appeals rejected each of Gonzales' arguments and affirmed, in an unreported opinion, the judgment of the Circuit Court for Baltimore County.

The Court of Special Appeals concluded that Gonzales' first argument, that he was denied his counsel of choice, is unsupported by the record. To support this conclusion, the intermediate appellate court reasoned that Gonzales never expressed an "unequivocal desire for Gordon to represent him at trial" and that he, instead, "unwaveringly asserted his right to

proceed without the assistance of counsel." The Court of Special Appeals rejected Gonzales' suggestion that he was denied his counsel of choice due to the fact that Henslee appeared to represent him on the date of his trial rather than Gordon. Relying primarily on a comment to the Restatement (Third) of Law Governing Lawyers, § 14 (2000)[3], the Court of Special Appeals determined that it is "well established that a retainer of one attorney in a firm is generally a retainer of other attorneys in that firm" and thus, Henslee was Gonzales' lawyer.

Next, the Court of Special Appeals dismissed Gonzales' argument that under the circumstances of his case, he had not knowingly and intelligently waived his right to counsel. After reviewing the record, the Court of Special Appeals held that the "trial court's insistence that [Gonzales] either go to trial with Henslee or proceed *pro se* did not render [Gonzales'] decision involuntary." The intermediate appellate court reasoned:

> At some point, "unless the defendant can show a meritorious reason for the discharge of current counsel, the appointment of substitute counsel is simply not an option available to the defendant. At such a point, a trial court may constitutionally require a defendant to choose between proceeding with current counsel and proceeding *pro se.*" *Fowlkes v. State,* 311 Md. 586, 605–06, 536 A.2d 1149 (1988). Appellant's knowing and intelligent refusal to proceed with Henslee, current and able counsel, was a voluntary waiver of his right to counsel.

Finally, the intermediate appellate court concluded that the trial court administered all of the steps mandated by Maryland Rule 4–215(e).

Gonzales sought review in this Court and we granted his petition for certiorari.[4]

---

**3.** The Court of Special Appeals also cited 7A C.J.S. *Attorney & Client* § 204 (2005) and 7 Am Jur.2d *Attorneys at Law* § 137 (2007) to support this position.

**4.** The questions presented for review are:

## II.

Gonzales argues that the trial court erred in denying him the right to representation by counsel of his choice by insisting, despite his protests, that Mr. Henslee was his attorney. Gonzales asserts that "the record amply substantiates [his] protest that Mr. Henslee was not his attorney" and that there is "no legal authority for a different conclusion." Gonzales avers that Gordon's appearance as his attorney is well documented throughout the record. He maintains that Gordon's entry of his own appearance as well as the appearance of his law firm does not mean that Henslee was also Gonzales' lawyer. Specifically, Gonzales urges that pursuant to Maryland Rules 1–301(b),[5] 1–312,[6] and 2–131[7] only individuals, not

---

1. Where one attorney had entered his appearance as counsel for Mr. Gonzales, had filed letters and motions on Mr. Gonzales' behalf, and had appeared at prior court proceedings as counsel for Mr. Gonzales, did the trial court deny Mr. Gonzales the right to representation by counsel of his choice by insisting, despite Mr. Gonzales' protest, that another attorney who was from the same law firm and was present at trial table was his attorney?

2. Did Mr. Gonzales voluntarily waive his right to counsel, where the trial court offered him the choice of proceeding with an attorney whom he did not believe he had hired to represent him or proceeding without an attorney?

**5.** In pertinent part, Maryland Rule 1-301(b) provides: '"(4) Attorney. Regardless of the nature of the action, the member of the bar who appears for a party shall be called attorney."

**6.** In pertinent part, Maryland Rule 1–312 provides:

(a) **General.** In addition to having been admitted to practice law in this State, an attorney signing a pleading or paper in compliance with Rule 1–311 shall comply with one of the following three requirements. The attorney shall:
(1) maintain an office for the practice of law in the United States;
(2) be a regular employee of an agency of government or of a business or other nongovernmental organization or association and be authorized to sign pleadings on behalf of the employer . . .
(3) have a practice limited exclusively to participation in legal services or pro bono publico program sponsored or supported by a local Bar Association as defined by Rule 16-701 b

**7.** Maryland Rule 2–131. **Appearance.** provides:

(a) **By an attorney or in proper person.** Except as otherwise provided by this rule or statute: (1) an individual may enter an appearance

law firms, may appear for a party and that the only attorney of record in this case was Mr. Gordon.

Gonzales also contends that he did not voluntarily waive his right to counsel "where the trial court offered him the choice of proceeding with an attorney whom he did not believe he had hired to represent him or proceeding without an attorney." Gonzales contends that a trial court has a "serious and weighty" responsibility to ensure that a waiver of the right to counsel is made knowingly and voluntarily and that under the facts of this case, the trial court abdicated such responsibility.

Relatedly, Gonzales posits that the trial court failed to comply with the requirements of Maryland Rule 4–215(e) because after insisting that Henslee was Gonzales' attorney, the court failed to inquire into Gonzales' reasons for his request to discharge Henslee and to make a ruling on the merits of Gonzales' complaints. Gonzales contends that he was given only a "Hobson's Choice" of going to trial with someone other than Mr. Gordon, the attorney whom he had selected and had conversed with about his case, or proceeding without the assistance of counsel. Gonzales urges that because the trial court failed to abide by the requirements of Rule 4–215(e), reversal is required.

The State of Maryland argues that the trial court properly complied with Constitutional requirements in accepting Gonzales' waiver of counsel. Initially, the State contends that the trial court's action of giving Gonzales a choice between proceeding with Mr. Henslee or proceeding *pro se* did not improperly deny Gonzales' Sixth Amendment choice of counsel because this action was consistent with the general rule "that

---

by an attorney or in proper person and (2) a person other than an individual may enter an appearance only by an attorney.

(b) **How entered.** An appearance may be entered by filing a pleading or motion, by filing a written request for the entry of an appearance, or if the court permits, by orally requesting the entry of an appearance in open court.

(c) **Effect.** The entry of an appearance is not a waiver of the right to assert any defense in accordance with these rules. Special appearances are abolished.

when a defendant retains an attorney in a law firm, he retains the entire firm and any attorney can handle matters related to the case if there is no contrary agreement." The State then contends that because the retainer of Mr. Gordon was a retainer of the Gordon & Henslee law firm, and because there is no evidence that Gonzales sought to retain only Gordon, Gonzales had "no right to demand that Gordon conduct this trial." The State concludes that "the trial court was correct in saying that Mr. Henslee was Gonzales' attorney and Henslee's appearance in lieu of Gordon did not deny Gonzales his right to counsel of choice."

Next, the State posits that Gonzales' waiver of counsel was voluntary. The State asserts that the record shows that Gonzales "knowingly and voluntarily chose to exercise his constitutional right to self-representation." According to the State, the trial court's insistence that Gonzales either go to trial with Mr. Henslee or proceed *pro se* did not render Gonzales' decision to proceed *pro se* involuntary. To support this position, the State directs the Court's attention to *Fowlkes v. State*, 311 Md. 586, 536 A.2d 1149 (1988). The State asserts that *Fowlkes* holds that "where a defendant asks to discharge counsel shortly before trial but does not show a meritorious reason, a trial court may constitutionally require the defendant to choose between proceeding with current counsel and proceeding pro se."

Finally, the State maintains that the trial court properly complied with Maryland Rule 4–215(e) in permitting Gonzales to discharge Mr. Henslee. The State urges that the trial court met all of its obligations under the Rule.

### III.

A criminal defendant has a right to representation at trial. *Sites v. State*, 300 Md. 702, 712 n. 3, 481 A.2d 192, 197 n. 3 (1984); Maryland Declaration of Rights, Article 21 ("[I]n all criminal prosecutions, every man hath a right ... to be allowed counsel...."). If the defendant cannot afford private representation, then he or she is entitled to an effective

defense from a public defender or court appointed attorney. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 805–06 (1963). If the defendant can afford private representation, however, then the defendant has a right to the attorney of his or her choice. *U.S. v. Gonzalez–Lopez*, 548 U.S. 140, 144, 126 S.Ct. 2557, 2562, 165 L.Ed.2d 409, 416–17 (2006). A criminal defendant also has the right to forgo representation and to represent him or herself. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975). Under both federal and Maryland law, however, a defendant who wishes to assert the right to self-representation must knowingly and intelligently waive his or her right to an attorney. *Id.*; *Johnson v. State*, 355 Md. 420, 444, 735 A.2d 1003, 1016 (1999).

■ Maryland Rule 4–215 ensures that a defendant's waiver of the right to counsel is knowing and voluntary by setting forth mandatory procedures that a trial court in this State must follow when a defendant seeks to assert this right. *Johnson*, 355 Md. at 452, 735 A.2d at 1020 ("Md. Rule 4–215 is a bright line rule that requires strict compliance in order for there to be a 'knowing and intelligent' waiver of counsel by a defendant."). Subsection (e) of the Rule sets forth the steps that must be taken when a defendant wishes to waive his or her right to counsel by discharging an attorney who has entered an appearance on the defendant's behalf. *See Knox v. State*, 404 Md. 76, 87, 945 A.2d 638, 645 (2008) (explaining that Maryland Rule 4–215 "exists as a 'checklist' that a judge must complete before a defendant's waiver can be considered valid ...") (quoting *Johnson*, 355 Md. at 426, 735 A.2d at 1006). Rule 4–215(e) provides:

> (e) **Discharge of counsel—Waiver.** If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the

next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

 Under the Rule, when a defendant requests permission to discharge an attorney whose appearance has been entered in his or her case, the court must provide the defendant an opportunity to explain why the defendant wishes to discharge that attorney. *Williams v. State*, 321 Md. 266, 273, 582 A.2d 803, 806 (1990) ("Allowing a defendant to specify the reasons for his request is an integral part of the Rule and cannot be dismissed as insignificant."). Next, the trial court must make a determination about whether the defendant's desire to discharge counsel is meritorious. *Moore v. State*, 331 Md. 179, 186–87, 626 A.2d 968, 971–72 (1993) (indicating that the record must be sufficient to reflect that the trial court actually considered the merit of the defendant's explanation for wanting to proceed without counsel); *Hawkins v. State*, 130 Md.App. 679, 687, 747 A.2d 759, 764 (2000) (holding that a judge did not comply with the dictates of Maryland Rule 4–215(e) when the judge did not "ask the defendant why he wish[ed] to discharge counsel, give careful consideration to the defendant's explanation, and then rule whether the explanation offered [was] meritorious"). Finally, as we explained in *Williams v. State, supra:*

> Where the trial judge finds a defendant's reasons to be meritorious, he must grant the request and, if necessary, give the defendant an opportunity to retain new counsel. When a defendant makes an unmeritorious request to discharge counsel, the trial judge may proceed in one of three ways: (1) deny the request and, if the defendant rejects the right to represent himself and instead elects to keep the

attorney he has, continue the proceedings; (2) permit the discharge in accordance with the Rule, but require counsel to remain available on a standby basis; (3) grant the request in accordance with the Rule and relieve counsel of any further obligation.

321 Md. 266, 273, 582 A.2d 803, 806 (1990).

The goals of Rule 4–215(e), and of Rule 4–215, in general, are to "protect [the defendant's] fundamental rights involved, to secure simplicity in procedure and to promote fairness in administration." *Parren v. State*, 309 Md. 260, 280, 523 A.2d 597, 607 (1987). As the Court of Special Appeals pointed out in its opinion, subsection (e) also serves as a mechanism for prohibiting defendants from unmeritoriously discharging their attorneys in an effort to delay their trial. *Fowlkes*, 311 Md. at 603, 536 A.2d at 1158. This aspect of the Rule was explained in *Fowlkes*. In that case, the defendant, Fowlkes, requested to discharge the assistant public defender who had entered an appearance on his behalf on the basis that the assistant public defender lacked the "true evidence" regarding his case. *Fowlkes*, 311 Md. at 591, 536 A.2d at 1152. The assistant public defender arranged to have an alternate assistant public defender represent Fowlkes. *Fowlkes*, 311 Md. at 592, 536 A.2d at 1152. Fowlkes indicated that he also wished to discharge the second assistant public defender because that attorney too, lacked the "true facts." *Fowlkes*, 311 Md. at 593, 536 A.2d at 1153.

The trial court allowed Fowlkes to explain his request to discharge the two assistant public defenders, specifically permitting him to elaborate on his assertions that neither assistant public defender had the "true evidence" or "true facts." *Fowlkes*, 311 Md. at 593–94, 536 A.2d at 1153. The gist of Fowlkes' explanation was that he felt the assistant public defenders had not taken the time or made the effort to properly review his case. *Id.* After hearing Fowlkes' explanation, the court determined that it was not meritorious and concluded that the original assistant public defender who appeared to represent Fowlkes was well prepared and ready

to try his case. *Id.* Thereafter, the court explained to Fowlkes that because he did not have a meritorious reason for discharging his attorney, if he elected to do that, his only remaining option would be to proceed *pro se.* *Fowlkes,* 311 Md. at 594, 536 A.2d at 1153–54. Fowlkes so elected stating that he did not want either assistant public defender to represent him and that if it was not possible for him to postpone the case, then he wished to proceed because he "[was] going to appeal it anyway." *Fowlkes,* 311 Md. at 596, 536 A.2d at 1155. A jury convicted Fowlkes of unlawful possession of narcotics paraphernalia and the court sentenced him to six months in prison. *Fowlkes,* 311 Md. at 598, 536 A.2d at 1155. Fowlkes noted an appeal to the Court of Special Appeals, which affirmed. *Id.*

Fowlkes then appealed to this Court on the basis that the trial court had improperly applied Rule 4–215(e). *Fowlkes,* 311 Md. at 598, 536 A.2d at 1155. We disagreed with Fowlkes' contention, stating that:

> [A]t some point, unless the defendant can show a meritorious reason for the discharge of current counsel, the appointment of substitute counsel is simply not an option available to the defendant. At such a point, a trial court may constitutionally require a defendant to choose between proceeding with current counsel and proceeding pro se; the defendant's knowing and intelligent refusal to proceed with current able counsel has repeatedly been deemed to constitute a voluntary waiver of the right to counsel.

*Fowlkes,* 311 Md. at 606, 536 A.2d at 1159. We held that the trial court in the *Fowlkes* case fully complied with Rule 4–215(e) and that Fowlkes effectively waived his right to counsel under the Rule. *Fowlkes,* 311 Md. at 606, 536 A.2d at 1160.

This case presents a different situation than the one presented in *Fowlkes.* This case does not involve, facially or by virtue of a conclusion expressed by the trial judge, a defendant who sought to discharge his counsel as a ploy to delay his trial. Rather, it involves a defendant whose counsel did not appear in court on the date of trial, and who was thereby forced to

either accept representation from someone he had not chosen, or to represent himself. The record reveals that Henslee informed the court that Gonzales did not wish for Henslee to represent him and also did not wish for Gordon to represent him.[8] The court asked Gonzales about this and Gonzales stated "I just want a jury trial today. I want to represent myself. I call my lawyer Mr. Gordon." The court responded to this statement by asking Gonzales if he wanted "counsel to represent [him]." Gonzales specifically stated: "He's [Henslee's] not my lawyer." The court then asserted that Henslee was Gonzales' attorney until the court "said that he wasn't." Gonzales remarked "okay." Next, the court informed Gonzales that it "ma[de] no difference what he sa[id]" about Henslee not being his attorney and then asked if Gonzales would like to represent himself. Gonzales stated yes and the court proceeded to provide Gonzales with the advisements required by subsection (a) of Rule 4–215.[9] Thus, unlike the

---

8. The trial transcript reveals that shortly after the case was called, Mr. Henslee stated to the court:

> Your Honor, just to sort of give you a background, it would seem like the first issue that we would need to address in this case is that Mr. Gonzales has made it clear two times, once to my partner Mr. Gordon and once to me, that, well, actually what he said was that he had hired another attorney. I, I don't have any information about that, and nobody has been here today. Mr. Gonzales basically told me that if the attorney that he had talked to didn't show up today that he would want to go forward and represent himself.

Thus, it appears from Henslee's statement to the court, that Henslee and Gonzales had engaged in some form of discussion prior to the commencement of trial and that during this discussion, Gonzales indicated he had hired another attorney. Gonzales told the court, however, that he call[ed] his lawyer Gordon, that Henslee was not his lawyer, and that Gordon was the "one he talk[ed] to all of the time about [his] case."

9. Rule 4–215. **Waiver of Counsel.** provides:

> (a) **First appearance in court without counsel.** At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:
> (1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

*Fowlkes* case, where the defendant's attorney (who was the attorney of record for the case) appeared on the date of trial and was then discharged, here, the defendant's attorney did not even appear on the date of trial to be discharged.

Moreover, Gonzales and the trial court never engaged in a discussion whereby Gonzales requested to discharge his attorney, Gordon. The trial court would not permit such discussion because it insisted that Henslee was Gonzales' lawyer. Under such circumstances, we hold that the trial court erroneously found that Gonzales knowingly and voluntarily chose to discharge his attorney and waive his right to counsel as permitted by Rule 4–215(e).[10] Henslee was not Gonzales' chosen lawyer and his appearance had not been entered on behalf of Gonzales. Moreover, the record simply does not support the conclusion that Gonzales wished to discharge his chosen attorney, Gordon. As noted above, prior to the trial court telling Gonzales that it didn't matter what he said, Gonzales indicated that Gordon was the lawyer that he

---

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

Rule 4–215(e) requires a trial court to provide the advisements contained in 4–215(a)(1–4) to a defendant who wishes to discharge his counsel and proceed *pro se*.

**10.** We do not hold that substitution of counsel is always improper. Where a lawyer other than counsel of record appears for trial, and the client does not consent to the substitution of counsel, the trial judge should inquire into the reasons why counsel of record is absent from the proceedings in order to gain more information about the status of the relationship between the counsel of record and the defendant. In the present case, the record does not reveal whether Gonzales entered into an agreement with Gordon or with the firm of Gordon & Henslee, with regard to the substitution of counsel. In addition, there is no evidence that the trial court inquired into whether such an agreement existed. Under these circumstances, the trial judge did not have sufficient information to conclude that (1) Henslee was Gonzales' attorney or (2) by not accepting Henslee's representation, Gonzales in effect, rejected Gordon's representation.

retained. Gonzales stated that he "call[ed]" his attorney Gordon, that he had talked to Gordon about his case, and that Henslee was not his attorney.

We reject the State's argument that Henslee was also Gonzales' attorney because he was Gordon's law partner. We acknowledge that members of a law firm generally share responsibility related to aspects of the representation of a client and are sometimes treated as the "same attorney" for conflict of interests purposes. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14, cmt. h (2000); *Austin v. State,* 327 Md. 375, 383, 609 A.2d 728, 732 (1992) ("[C]ases which have considered the issue have generally concluded that representation of codefendants by partners or associates in a private law firm should be treated the same, for purposes of conflict of interest analysis, as representation of codefendants by one attorney."). We conclude, however, that where as here, the defendant has exercised his right to select the private counsel of his choice, the defendant may not be forced to either accept an attorney that was not retained or to proceed *pro se* in the event the chosen attorney does not appear on the date of the defendant's trial.[11] *See English v. State,* 8 Md.App. 330, 335, 259 A.2d 822, 826 (1969) ("[O]nce counsel has been chosen, whether by the court or the accused, the accused is entitled to the assistance of *that* counsel at trial.") (emphasis in original); *cf. Chandler v. Fretag,* 348 U.S. 3, 5, 75 S.Ct. 1, 5, 99 L.Ed. 4, 10 (1954) ("[A] defendant must be given reasonable opportunity to employ *and consult* with counsel; otherwise, the right to be heard would be of little worth.") (emphasis added); *Platt v. Henderson,* 227 Or. 212, 237–38, 361 P.2d 73, 85 (1961) (recognizing that "a client has a right to select the attorney he prefers to serve him and that a member of a firm cannot force himself upon a client of the firm merely because he is a member of that partner-

---

11. In such circumstances the defendant may, of course, select to discharge both the replacement attorney and the attorney that the defendant hired to represent him and elect to represent himself *pro se.* The defendant may also select to proceed with the replacement attorney.

ship").[12] As the Court of Appeals for the Third Circuit recognized in *United States v. Laura,* 607 F.2d 52, 56 (3d Cir.1979):

> Attorneys are not fungible, as are eggs, apples and oranges. Attorneys may differ as to their trial strategy, their oratory style, or the importance they give to particular legal issues. These differences, all within the range of effective and competent advocacy, may be important in the development of a defense. It is generally the defendant's right to make a choice from the available counsel in the development of his defense. Given this reality, a defendant's decision to select *a particular* attorney [is] critical. . . .

*Accord U.S. v. Gonzalez–Lopez,* 399 F.3d 924, 929 (8th Cir. 2005) (emphasis added). Because Gonzales never elected to discharge his particular attorney, Gordon, pursuant to Maryland Rule 4–215(e), the trial court erred in concluding that Gonzales waived his right to an attorney pursuant to that Rule and voluntarily elected to represent himself.[13]

---

**12.** Gonzales cites Maryland Rules 1–301(b), 1–312, and 2–131 to support the conclusion that Gordon alone was Gonzales' attorney. These Rules apply to civil actions, but do lend limited support to the notion that individuals rather than law firms appear on behalf of parties. The Rule regarding appearances in criminal actions is Maryland Rule 4–214. This Rule provides:

> (a) **Appearance.** Counsel retained or appointed to represent a defendant shall enter an appearance in writing within five days after accepting employment, after appointment or after the filing of the charging document in court, whichever occurs later. An appearance entered in the District Court will automatically be entered in the circuit court when a case is transferred to the circuit court because of a demand for a jury trial. In any other circumstances, counsel who intends to continue representation in the circuit court after appearing in the District Court must re-enter an appearance in the circuit court.

This Rule too, supports the conclusion that individual attorneys, rather than every lawyer within a law firm, appear on behalf of a party.

**13.** Because we decided the issues presented in this appeal on the basis of Maryland Rule 4–215(e), we need not decide the issues under the United States Constitution or the Maryland Declaration of Rights. *See Knox,* 404 Md. at 88, 945 A.2d at 645 (declaring that if a decision is required under the Maryland Rules, it "need not" also be decided on a Constitutional basis).

538

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. RESPONDENT TO PAY COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.