28 A.3d 118

**Jerome PINKNEY**

v.

**STATE of Maryland.**

**No. 2661, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 2, 2011.

Martha Gillespie (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Gary E. O'Connor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: GRAEFF, WATTS and CHARLES E. MOYLAN, JR., (Retired Specially Assigned) JJ.

WATTS, J.

Appellant, Jerome Pinkney, was charged in the District Court of Maryland for Baltimore City with second-degree assault, resisting arrest, and disorderly conduct. *See* Md. Code Ann., Crim. Law ("C.L.") § 3–203 (assault in the second degree); C.L. § 9–408(b) (resisting arrest); and C.L. § 10–201(c)(2) (disorderly conduct). The case was transferred to the Circuit Court for Baltimore City following appellant's request for a jury trial. Prior to trial in the circuit court, appellant filed a motion to discharge his lawyer. The court denied the motion without prejudice and held that appellant could renew the motion at trial. On the first day of trial, prior to jury selection, appellant renewed the motion to discharge his attorney. The trial judge denied the motion.

The jury convicted appellant of second-degree assault.[1] Appellant was sentenced to eighteen months of imprisonment, with credit for time served. Appellant noted a timely appeal and presented the following questions for review, which we quote:

I. When the trial judge found that the Appellant had not presented meritorious reasons for his request to discharge counsel and that Appellant was therefore not entitled to the appointment of new counsel, did he violate Maryland Rule 4–215(e) in failing to inform the Appellant that he could nonetheless discharge his counsel and proceed *pro se* if he chose?

II. Did the trial judge abuse his discretion in failing to give a missing witness instruction?

---

1. At the end of the State's case-in-chief, the State *nol prossed* the resisting arrest charge and the trial judge granted appellant's motion for judgment of acquittal as to the disorderly conduct offense.

For the following reasons, we answer both questions in the negative and shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 2009, at approximately 5:05 p.m., Detective Austin Sailor, of the Baltimore City Police Department, was working in plain clothes capacity in an unmarked vehicle near the 2300 block of Harford Road in Baltimore City, Maryland. Detective Sailor was traveling with two other detectives northbound on Harford Road and made a left turn onto Cliftview Avenue. At that time, Detective Sailor saw approximately seven to eight people standing near the intersection of Harford Road and Cliftview Avenue. Detective Sailor testified, as follows, as to his observations of the group:

> At that point, while watching the group of people I observed that some green currency from somewhere began flying in the air. I observed an African American female bend down to pick up someone's currency. At that time, the gentleman stood up in front of that female, yelled, give him that money. The female stood up and **I observed the male strike her in the face with the left hand.**

(Emphasis added).

Detective Sailor identified appellant in court as the person who struck the female. Detective Sailor testified that at the time of the incident, appellant was "[v]ery angry[,] [v]ery aggressive." Detective Sailor described the incident, stating that appellant was "significantly larger" than the female, and testified that he "observed the Defendant take a boxer's type stance. He pulled back with his left hand, popped back and struck her with an overhand left to the right-side of the jaw." The female fell to the ground after being struck. Detective Sailor saw the woman crying and holding her jaw with her right hand. He observed scratches and bruising on her face. Detective Sailor testified that the female declined medical treatment. Detective Sailor testified that when being placed under arrest, appellant struggled, and it took three detectives to place him on the ground, handcuff and arrest him.

Detective Chris Merino of the Baltimore City Police Department, who was riding with Detective Sailor on July 29, 2009, corroborated Detective Sailor's account of the incident. Detective Merino testified that as they turned the corner onto Cliftview Avenue, he heard shouting, saw appellant "[a]ngry" and "[u]pset," and heard him say "give him that money." Detective Merino testified that appellant was facing a female at the time, and within less than a minute, Detective Merino saw appellant "strike the female in front of him." Detective Merino testified that appellant hit the female in the mouth area with a closed fist. Detective Merino stated that when he and two other detectives went to place appellant under arrest, appellant "became a little tense, he tensed up, kind of resisted a little bit[,]" and the three detectives were able to handcuff him and place him under arrest.

Appellant testified on his own behalf that, on the date and time in question, he had just finished work and was standing at the bus stop on Harford Road when "[p]olice come up and grabbed [him]." Appellant testified that the officers asked him for identification and he showed them his identification as well as a green parole card.[2] Appellant testified that at that point, he was arrested. Appellant testified that the police officers claimed he had robbed someone.

Additional facts will be set forth below as necessary to resolve the questions presented.

## DISCUSSION

### I.

In a letter addressed to the trial court prior to trial, appellant moved to dismiss his attorney. Appellant alleged that his attorney was conspiring with the prosecutor and was not properly defending him. The trial court denied the motion, but indicated that on the day of trial, appellant could

---

2. Appellant testified that he was on parole for robbery from 1988 and 1990.

renew the motion. On the day of trial, appellant's counsel renewed the request and the following exchange occurred:

[PROSECUTOR]: State of Maryland vs. Jerome Pinkney, 809247030. Lauren Polk for the State.

[DEFENSE COUNSEL]: Brandon Thornton, Your Honor. Mr. Pinkney is here, and we're at a point where Mr. Pinkney is petitioning the court to discharge the service of the Public Defender. Your Honor, he is not speaking to me and he does not wish to stand with me at the trial table.

THE COURT: All right. Mr. Pinkney, you need to stand at the trial table, because your case has been called whether Mr. Thornton is representing you or not.

[PROSECUTOR]: State's ready, Your Honor.

THE COURT: Now, very quickly Mr. Pinkney. What's the problem with Mr. Thornton in your eyes?

THE DEFENDANT: Huh?

THE COURT: What problem do you have with Mr. Thornton representing you?

THE DEFENDANT: I don't want him to represent me. I asked him something last time. You asked me, what did I say? He said, nothing, like you know.

THE COURT: Have you hired an attorney, Mr. Pinkney?

THE DEFENDANT: No.

THE COURT: All right. Well, Mr. Thornton is the attorney you had from the Public Defender's Office. Are you able to talk with him about your case?

THE DEFENDANT: Two minutes ain't ample time to talk to nobody about no case. The only time I've seen him is when I come in here. He talked to me for about two minutes.

THE COURT: All right. Mr. Thornton, have you had time to prepare for trial in this case?

[DEFENSE COUNSEL]: Your Honor, we don't have any witnesses. It is what it is.

THE COURT: Have you reviewed what the State has in discovery?

[DEFENSE COUNSEL]: Yes.

THE COURT: Mr. Pinkney, are there any witnesses to this event that you've identified?

THE DEFENDANT: What do you mean?

THE COURT: Have you identified any witnesses to this alleged event?

THE DEFENDANT: On my behalf?

THE COURT: Yeah, beside from you obviously. Have you identified anyone who might serve as a witness in this case?

THE DEFENDANT: No. I haven't had nobody been here (inaudible).

THE COURT: In this situation, Mr. Pinkney, there isn't a whole lot to prepare for the case, beside from being familiar with the police reports, for Mr. Thornton to be ready to cross examine the officers and then to talk with you; and I don't want you to say anything about the incident. But, to talk with you about your version of the events and whether there's a possibility that you're going to testify in the case. But, there's not a whole lot to prepare in the case other than that.

You've written me a letter that says, you think that Mr. Thornton is working with the State, but I don't understand what the basis for that would be. I see Mr. Thornton frequently. He tries cases before me. He does so very ably. I don't understand what the issue is with Mr. Thornton.

THE DEFENDANT: He got a motion—he filed for motion of discovery. He thinks it's going to take—he gets the State burden and wants the discovery. He never gave no pre-trial investigation of the crime scene, no. (Inaudible.)

THE COURT: There is no—if there are no other witnesses, there's nothing to investigate.

THE DEFENDANT: It's a (inaudible) somebody was here. He never went to see—to talk to the person who was there that I took a hit of (inaudible).

THE COURT: All right. I'm not satisfied that there's any basis for you to discharge Mr. Thornton as your Counsel. He's assigned by the Public Defender's Office and that's the—a very capable attorney that you got to represent you in this case. Counsel, is this case ready for trial?

Appellant contends that the trial court erred under Md. Rule 4-215(e) by failing to inform him that he could discharge his counsel and proceed *pro se*. Recognizing that the trial court "gave [him] an opportunity to air his grievances with respect to his assigned counsel," appellant contends that the trial court erred by failing to give him "the option of representing himself after ensuring that [he had] been advised of the pitfalls of self-representation."

In contrast, the State responds that the trial court properly complied with Md. Rule 4-215(e) and that, "[u]nder the facts of this case, the trial court was not required to advise [appellant] of the right to proceed *pro se*." We agree.

In this case, appellant does not dispute that he was given an opportunity to explain the reasons he wanted to discharge his attorney. Instead, appellant's primary contention is that, after the trial judge found those reasons to be unmeritorious, the trial judge was required to inform him that he could discharge counsel and proceed *pro se*. In disagreement with appellant, we conclude that Md. Rule 4-215(e) does not require that a trial judge advise a defendant of the option of proceeding *pro se*.

■ A defendant in a criminal prosecution has a constitutional right to the effective assistance of counsel and the corresponding right to reject that assistance and represent himself. *Gonzales v. State*, 408 Md. 515, 529-30, 970 A.2d 908 (2009). As the Court of Appeals has stated, "the Sixth Amendment to the United States Constitution grants the accused not only the right to be represented by counsel, but also the right to make his own defense **without** the assistance of counsel." *Gregg v. State*, 377 Md. 515, 548, 833 A.2d 1040 (2003) (footnote omitted) (emphasis in original) (citing *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562

(1975)); *accord State v. Campbell,* 385 Md. 616, 626–27, 870 A.2d 217 (2005).

As to the implementation and protection of the right to counsel, Md. Rule 4–215(e) provides as follows:

> If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) [3] of this Rule if the docket or file does not reflect prior compliance.

(Footnote added).

▆▆▆ "When interpreting the Maryland Rules, we look to the ordinary rules of statutory construction." *King v. State,*

---

**3.** Md. Rule 4–215(a)(1–4) provides as follows:

(a) First appearance in court without counsel. At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:
(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.
(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.
(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

407 Md. 682, 698, 967 A.2d 790 (2009) (citation omitted). The plain language of Md. Rule 4–215(e) imposes upon the trial court the responsibility **not to permit** discharge of counsel **unless** the defendant is informed of the possibility that trial will proceed with the defendant unrepresented by counsel. Where a trial court finds no meritorious reason for the requested discharge of counsel and does not permit the discharge, Md. Rule 4–215(e) does not impose an obligation on the trial court to inform the defendant of the option to proceed *pro se*. Md. Rule 4–215(e) states if the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without advising that the trial will proceed with the defendant unrepresented. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of Md. Rule 4–215. Md. Rule 4–215(a)(4) provides that the court shall conduct an inquiry under section (b) [4] if the defendant indicates a desire to waive counsel. Thus, where the trial court finds no meritorious reason for the defendant's request and **does not permit** discharge of counsel, under a plain reading of Md. Rule 4–215(e), there is no requirement that the trial court advise the defendant of the right to proceed *pro se.*

In *Gonzales*, 408 Md. at 531–32, 970 A.2d 908, the Court of Appeals analyzed Md. Rule 4–215 and stated as follows:

> Under the Rule, when a defendant requests permission to discharge an attorney whose appearance has been entered in his or her case, the court must provide the defendant an opportunity to explain why the defendant wishes to discharge that attorney. *Williams v. State*, 321 Md. 266, 273,

---

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

**4.** Md. Rule 4–215(b) provides, in pertinent part:

Express waiver of counsel. If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, the court determines and announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel.

582 A.2d 803, 806 (1990) ("Allowing a defendant to specify the reasons for his request is an integral part of the Rule and cannot be dismissed as insignificant."). Next, the trial court must make a determination about whether the defendant's desire to discharge counsel is meritorious. *Moore v. State,* 331 Md. 179, 186–87, 626 A.2d 968, 971–72 (1993) (indicating that the record must be sufficient to reflect that the trial court actually considered the merit of the defendant's explanation for wanting to proceed without counsel); *Hawkins v. State,* 130 Md.App. 679, 687, 747 A.2d 759, 764 (2000) (holding that a judge did not comply with the dictates of Maryland Rule 4–215(e) when the judge did not "ask the defendant why he wish[ed] to discharge counsel, give careful consideration to the defendant's explanation, and then rule whether the explanation offered [was] meritorious"). Finally, as we explained in *Williams v. State, supra:*

> Where the trial judge finds a defendant's reasons to be meritorious, he must grant the request and, if necessary, give the defendant an opportunity to retain new counsel. When a defendant makes an unmeritorious request to discharge counsel, the trial judge may proceed in one of three ways: (1) deny the request and, if the defendant rejects the right to represent himself and instead elects to keep the attorney he has, continue the proceedings; (2) permit the discharge in accordance with the Rule, but require counsel to remain available on a standby basis; (3) grant the request in accordance with the Rule and relieve counsel of any further obligation.

321 Md. 266, 273, 582 A.2d 803, 806 (1990).

Prior to *Gonzales,* the Court of Appeals explained in *State v. Brown,* 342 Md. 404, 425, 676 A.2d 513 (1996):

> If the reason is meritorious, the court must permit dismissal, continue the case if necessary, and warn the defendant that he or she may be required to proceed pro se if new counsel is not engaged by the next trial date. If the reason for dismissal is not meritorious, however, the court must engage in a third-level inquiry. The court may still permit dismissal of counsel, but only after warning the defendant of

the possibility he or she will proceed pro se if substitute counsel is not secured. **The court may also reject the defendant's request to dismiss counsel if the reason is not meritorious.**

(Emphasis added.)

In light of the Court's comment in *Williams,* 321 Md. at 273, 582 A.2d 803, that, "[w]hen a defendant makes an unmeritorious request to discharge counsel, the trial judge may . . . deny the request and, if the defendant rejects the right to represent himself and instead elects to keep the attorney he has, continue the proceedings[,]" *Williams* merits discussion. In *Williams,* the Court held that the trial court's failure to allow the defendant to explain his reasons for seeking to discharge his counsel before denying the request was reversible error. The Court reasoned that the trial court was unable to determine whether the defendant's reasons for wanting to discharge counsel were meritorious or not because the trial court did not allow the defendant to explain the reasons. The issue before the Court in *Williams* was whether the trial court's refusal to permit the defendant to state his reasons for wanting to discharge his attorney was reversible error. The Court's discussion of the options a trial judge has when a trial judge determines—based on the defendant's explanation—that the defendant's reasons for seeking to discharge his counsel was unnecessary to the holding, and therefore dicta. We recognize that strict compliance with Md. Rule 4–215 is required; however, no reported Maryland case has directly held that a trial judge must advise a defendant of his right to proceed *pro se* after finding the defendant's reasons for discharging his counsel are unmeritorious. We are not convinced on the strength of the language in *Williams* to read this requirement into Md. Rule 4–215.

 It is the defendant's burden to assert the right to proceed *pro se.*[5] "[W]hen an accused desires to represent

---

**5.** In *Broadwater v. State,* 401 Md. 175, 931 A.2d 1098 (2007), the Court of Appeals discussed waiver of the right to counsel by an unrepresented

himself **he must assert that right,** and its grant is conditioned upon a valid waiver of the right to assistance of counsel." *Parren v. State,* 309 Md. 260, 266, 523 A.2d 597 (1987) (emphasis added); *see also Leonard v. State,* 302 Md. 111, 119, 486 A.2d 163 (1985) ("The United States Supreme Court and other courts throughout the nation have thus sought to protect the right to counsel unless the defendant properly asserts his right to represent himself. The assertion of this right is conditioned upon a valid waiver of the right to assistance of counsel."). As this Court has recognized, there is a "finely calibrated balance between the conflicting and mutually exclusive right to counsel and right to self-representation." *Muhammad v. State,* 177 Md.App. 188, 242, 934 A.2d 1059 (2007), *cert. denied,* 403 Md. 614, 943 A.2d 1245 (2008) (citations omitted). We have stated:

> Of two mutually exclusive rights, the one that you will retain if you waive nothing is self-evidently the preferred alternative. Every additional requirement imposed by the rules increases the likelihood that the preferred right, that of counsel, will not be lost. By inverse proportion, however, it decreases the likelihood that the non-preferred right of *pro se* representation will be successfully invoked. Such implementing rules, to be sure, may better *protect the defendant,*

---

defendant where the case had been transferred to the circuit court from the district court upon the defendant's prayer for a trial by jury. In *Broadwater,* in interpreting Md. Rule 4–215(a), the Court of Appeals stated:

> The Rule "provides an orderly procedure to insure that each criminal defendant appearing before the court be represented by counsel, or, if he is not, that he be advised of his Sixth Amendment constitutional right to the assistance of counsel, as well as his correlative constitutional right to self-representation."

401 Md. at 180–181, 931 A.2d 1098 (quoting *Wright v. State,* 48 Md.App. 185, 191, 425 A.2d 1385, *cert. denied,* 290 Md. 724 (1981)). The Court held that the advisements required by Md. Rule 4–215(a) may be satisfactorily given to a defendant in a "piecemeal and cumulative" manner by successive judges of the district and circuit courts as long as the advisements achieve the prediction of a knowing and intelligent waiver. *Id.* at 206–07, 931 A.2d 1098. In *Broadwater,* the Court did not address whether a circuit court is required to advise a defendant of the right to proceed *pro se* when giving advisements under Md. Rule 4–215(e).

but only in the sense that the unspoken premise of the rulemakers is that the best way to protect the defendant is to burden, and thereby to discourage, the option of *pro se* representation.

*Id.* at 243, 934 A.2d 1059 (emphasis in original).

Under Md. Rule 4–215(e), once a trial court determines that a defendant's reasons for wanting to discharge counsel are unmeritorious and do not permit the discharge, the court may deny the request without affirmatively informing the defendant of the possibility to proceed *pro se*. In this case, appellant did not seek to proceed *pro se* or raise the issue of self-representation in any manner. In fact, as the State notes, in the written request filed prior to trial, appellant ends by asking "the court to find me Legal Counsel." We conclude that the trial court did not abuse its discretion in denying appellant's request to discharge counsel.

## II.

■ Appellant contends the circuit court erred in refusing to give a missing witness instruction as to the woman involved failing to testify at trial. Prior to appellant testifying, defense counsel requested the missing witness instruction and the following colloquy occurred:

THE COURT: I will not give the instruction with respect to the victim. The instruction calls for someone who is peculiarly within the power of a party to produce and there's nothing that makes the victim peculiar within the power of the State to produce in the case. They obviously—you've gotten testimony that they identified her. They could have summoned her. They could have asked for body attachment and, so on, but that's true of any witness. This is not a chemist. This is not some particular witness who is employed by the State. So I don't think it's appropriate to give that instruction with respect to the victim.

Defense counsel asked to present further argument and the following exchange ensued:

[DEFENSE COUNSEL]: It is a witness that the State's witnesses identified. It was through the State's witnesses that that witness's information was provided and outside of her name, there's no other information provided except for her name. There's no date of birth and it's not even clear that the address that's provided is the correct address. So the officers or the individuals who identified the witness, they were in the best position to garner that information at the time; and whether the information was good information with regard to producing this witness for court. It's still in question because the witness is (indiscernible).

THE COURT: You have the exact same tools as the State has to produce a civilian witness. There's nothing that makes that witness peculiar within the power of the State, that the instruction allows the jury to draw an adverse inference against the State if they find that the witness—if there's no explanation for the witness's absence. It's not an appropriate instruction under these circumstances.

[DEFENSE COUNSEL]: Your Honor, there is lapse. There is no explanation for the witness's absence.

THE COURT: It doesn't even trigger unless the witness is peculiarly within the power of the State to produce. This was someone who was in custody and the State had failed to transport them. If this was someone who was employed by the State or the State otherwise had a particular power to produce her but that's not the case here.

[DEFENSE COUNSEL]: Your Honor, I'll just note for the record my exception to that instruction not being given.

THE COURT: All right. I note that the State asked for the same instruction. Does the State want it given in this case?

[PROSECUTOR]: No, Your Honor.[6]

Appellant contends that the circuit court erred in refusing to give the missing witness instruction regarding the witness because the identity of the witness was in the State's control,

---

6. Defense counsel preserved his objection at the conclusion of jury instructions.

and therefore, the State was in the best position to secure the witness's presence at trial. Conversely, the State responds that the trial judge "properly denied the request to give the missing witness instruction on the ground that the record did not show that the witness was peculiarly available to the State."

The missing witness instruction is set forth in Maryland Pattern Jury Instruction Criminal ("MPJI–CR") 3:29 (2007) as follows:

You have heard testimony about _____, who was not called as a witness in this case. If a witness could have given important testimony on an issue in this case and if the witness was peculiarly within the power of the [State] [defendant] to produce, but was not called as a witness by the [State] [defendant] and the absence of that witness was not sufficiently accounted for or explained, then you may decide that the testimony of that witness would have been unfavorable to the [State] [defendant].

■ We review the trial court's denial of a requested jury instruction under an abuse of discretion standard. *See Janey v. State,* 166 Md.App. 645, 666, 891 A.2d 355, *cert. denied,* 392 Md. 725, 898 A.2d 1005 (2006). This Court has explained: "There is an abuse of discretion 'where no reasonable person would take the view adopted by the [trial] court.'" *Peterson v. State,* 196 Md.App. 563, 584, 10 A.3d 838 (2010) (quoting *Metheny v. State,* 359 Md. 576, 604, 755 A.2d 1088 (2000) (quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110 (1997))).

■ In *Woodland v. State,* 62 Md.App. 503, 510, 490 A.2d 286, *cert. denied,* 304 Md. 96, 497 A.2d 819 (1985), we held that "the missing witness rule applies where (1) there is a witness, (2) who is peculiarly available to one side and not the other, (3) whose testimony is important and non-cumulative and will elucidate the transaction, and (4) who is not called to testify."[7] A "relationship" between a party and a witness in the missing

---

7. Appellant wrongfully relies on *Cost v. State,* 417 Md. 360, 10 A.3d 184 (2010), a case which concerns the failure to give a missing evidence

witness instruction context generally refers to a "family relationship, an employer-employee relationship, and, sometimes, a professional relationship." *Christensen v. State,* 274 Md. 133, 134–35, 333 A.2d 45 (1975) (quoting Underhill, *Criminal Evidence* § 45 (rev. 6th ed. P. Herrick 1973)). "Underlying this principle is the realization that despite a party's theoretical ability to subpoena the witness's testimony, there is a practical concern that certain relationships may engender a very strong bias which would undermine the utility of that witness's testimony." *Davis v. State,* 333 Md. 27, 50, 633 A.2d 867 (1993). As such, the rule looks toward addressing the bias engendered by feelings of love, friendship, or loyalty. In this case, there was no relationship between the witness and the State. A police officer took the witness's name and had no further contact with her.

Here, there is no indication that the witness was peculiarly available to the State and not to the defense. In support of the argument that the witness was peculiarly available to the State, appellant relies on the following testimony during the cross-examination of Detective Merino:

> [DEFENSE COUNSEL]: Now, at some point as part of this incident, the name of this female was obtained. Is that correct?

---

instruction. In *Cost,* 417 Md. at 380–81, 10 A.3d 184, the Court of Appeals held that a missing evidence instruction should have been given where evidence, which "was highly relevant" to the defendant's case, was "destroyed while in State custody." In *Cost,* the defendant, an inmate at a State correctional facility, was convicted of reckless endangerment for allegedly stabbing another inmate. 417 Md. at 365, 368, 10 A.3d 184. At trial, the State introduced photographic evidence of the defendant's cell from the night of the alleged stabbing which appeared to show blood stains on the floor of the cell, as well as a blood stained towel. *Id.* at 366, 10 A.3d 184. No physical evidence from the defendant's cell was retained. *Id.* at 366–37, 10 A.3d 184. The Court concluded that the defendant "was entitled to a jury instruction on the missing evidence because the State had destroyed highly relevant evidence in its custody that it normally would have retained and submitted to forensic examination." *Id.* at 382, 10 A.3d 184. In *Cost,* the Court noted that "[s]uch evidence might well have created reasonable doubt as to [the defendant's] guilt." 417 Md. at 380, 10 A.3d 184. *Cost* does not involve the circumstance of a witness not called to testify at trial.

[DETECTIVE MERINO]: It was.

[DEFENSE COUNSEL]: Her address was obtained?

[DETECTIVE MERINO]: I believe so, yes.

This record, however, does not support appellant's contention that the witness was solely available to be called by the State. The witness's name appears in the Statement of Charges and the Statement of Probable Cause which were provided to the defense during discovery.[8] As such, the identity of the witness was equally available to appellant and the State; therefore, the missing witness instruction was not warranted in this case.

The record is devoid of any attempt by appellant to seek or secure the victim's presence as a witness. This Court has previously concluded that a witness was not peculiarly available to the State where there was no showing that the defendant had exhausted the avenues available to produce the witness. *Bing Fa Yuen v. State*, 43 Md.App. 109, 112, 403 A.2d 819 (1979), *cert. denied*, 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980). Appellant, in this case, has not identified any efforts or attempts on his part to bring the woman identified in the charging document as a witness. Indeed, the trial court observed that appellant had the "exact same tools as the State ha[d] to produce a civilian witness." Under these circumstances, the trial court's decision not to give the missing witness instruction was not an abuse of discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

8. On September 16, 2009, the State filed the State's Notice of Compliance with Md. Rule 4–263, which indicated that appellant was provided with a copy of the Statement of Charges and the Statement of Probable Cause.